# Union Stave Co. *v.* Smith.

### *Action of Assumpsit.*

1. *Action to recover purchase price of property belonging to estate of decedent; denial of title of vendor while retaining possession; estoppel.* A vendee in .possession of property of the estate of a ·decedent acquired under a purchase from the executor or administrator, while retaining possession thereof, can not, in a suit for the purchase price by his vendor, defend upon the ground that the vendor from whom he purchased and received possession had no authority to make the sale and could convey no title.—(*Riddle v. Hill*, 51 Ala. 224; *Wilson v. Armstrong*, 42 Ala. 168; *Beene v. Collenberger*, 38 Ala. 647; *Pettit v. Pettit*, 32 Ala. 288; *Fambro v. Gantt*, 12 Ala. 298, in so far as they conflict with the principle here announced, overruled.)—BRICKELL, C. J., *dissenting*.

2. *Same; same; same.*—When a person in possession of land, not claiming it in his own right, sells the same for a consideration, and puts the vendee, who has knowledge of the nature of his claim, in possession, the vendee can not, without surrendering possession so acquired, defend an action brought by the vendor to recover the purchase price, upon the ground that his vendor had no authority to sell and convey title.—BRICKELL, C. J., *dissenting*.

APPEAL from the Circuit Court of Jackson.

Tried before the Hon. JOHN B. TALLY.

This was an action brought by the appellee, Barton B. Smith, against the appellants, the Union Stave Company, to recover an amount alleged to be due for timber sold by the plaintiff.

The complaint contained the common counts, claiming $460 as the amount due, and a special count for said sum "due by contract in writing made and entered into by and between the plaintiff and Sharp & Co., by which the plaintiff sold to Sharp & Co., all the white oak timber suitable for stave bolts on certain described lands, in

[Union Stave Co. v. Smith.]

consideration of the sum of three dollars per cord for said stave bolts, of which the said Sharp & Co. were to keep a true and correct account, and pay to the plaintiff the said sum of three dollars per cord on the 10th day of each month for all timber received and removed from the premises during the last preceding month. The defendants composing the Union Stave Company became the successors in the business of the said Sharp & Co., and assumed the performance of the said contract, and received and removed from the premises a large amount of stave bolts, to-wit, the sum of four hundred and fifty cords, but failed to keep a true and correct account of the same and to pay the plaintiff for a large portion of said timber, to-wit, one hundred and fifty cords, wherefore the said sum of four hundred and fifty dollars remains unpaid. Said several sums, with the interest thereon, are due and unpaid.'"

The defendants pleaded : "1. They never assumed to pay the debt or demand sued on or any part thereof. 2. They do not owe the debt for which this suit is brought. 3. They have never received and have not any money belonging to plaintiff or for his use. 4. They never entered into any such contract in writing as referred to in said complaint. 5. They did not undertake to perform any written contract entered into by F. W. Sharp & Co. ; they know nothing of the contract of F. W. Sharp & Co., and are not bound for its performance by any. agreement with the plaintiff. 6. They did not assume the performance of said Sharp & Co.'s contract with the plaintiff. 7. That the plaintiff did not own the land off of which said timber was removed, and had no right to sell the timber. 8. There was no consideration for said promise. 9. Want of consideration. 10. Failure of consideration. 11. And that the plaintiff sold that which he did not own and which he had no right to convey."

The plaintiff demurred to pleas 7 and 11, on the grounds : 1. Said pleas present no legal and valid defense to the complaint, in that they do not show that the plaintiff failed to deliver the property sold, or that the defendants had been deprived of the possession or use of the property by the claim of a third person, or any person whomsoever. 2. Said pleas do not show that the defendants have retained or offered to retain said prop-

erty, or have been deprived of the possession thereof in any way. This demurrer was sustained to each plea. The defendants then filed an additional plea, in which they alleged "that plaintiff is not the owner of the claim on which this suit is founded. It is for timber taken from the lands of H. F. Smith, deceased, and belongs to his heirs. Plaintiff was merely the agent and had no interest or claim to the timber. The name of the heirs or legatees of H. F. Smith are unknown to defendants. And defendants make oath that this plea is true." Issue was joined upon this and the other pleas to which demurrers were not interposed. The facts of the case are sufficiently stated in the opinion.

Upon the introduction of all the evidence, the defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "If the jury believe the evidence, they should find for the defendant." (2.) "If the testimony before the jury leaves the matter in such a state of uncertainty as not to afford the jury any reliable data to ascertain the number of cords of wood which defendant received, except by guess or speculation, then the jury should find for the defendant." (3.) "The burden of proof is on the plaintiff to make out his case to the reasonable satisfaction of the jury by a preponderance of the evidence, and if the jury believe from the evidence that the timber of Jesse Isbell and other parties was carried to the mill and manufactured into staves and shipped with Smith's staves in the 22 cars, commencing the 2d day of June, and the 19th day of July, 1891, the date of the attachment, and the jury is unable to ascertain from the evidence the amount of the Smith staves, then the plaintiff has failed to make out his case, and the jury should find for the defendant."

There were verdict and judgment for the plaintiff. The defendant appeals, and assigns as error the sustaining of the demurrer to the pleas numbered 7 and 11, and the refusal of the charges requested by the defendant.

J. E. BROWN, for appellant.—An administrator or executor has nothing to do with the land of a decedent, except when necessary to pay debts.—*Lee v. Downey*, 68 Ala. 101; *Trimble v. Fariss*, 78 Ala. 260; *Nelson v. Murfee*, 69

Ala. 603; *Calhoun v. Fletcher*, 63 Ala. 581; *Owen v. Childs*, 58 Ala. 113; *Gayle v. Johnson*, 80 Ala. 388.

If an executor makes a sale of the property of an estate illegally, he can not recover on the contract, notwithstanding the purchaser remains in possession.— *Fambro v. Gantt*, 12 Ala. 298; *Wilson v. Armstrong*, 42 Ala. 168; *Beene v. Collenberger*, 38 Ala. 647.

MARTIN & BOULDIN, *contra.*—A vendee of land, so long as he retains possession under a contract of sale, can not resist an action at law for the purchase money, upon the ground that the vendor had no title. This rule of estoppel applies equally to the sale of personal property; and the vendee of personal property can not, while holding possession thereof, defend against an action by the vendor for the purchase money, by proof of want of title in the vendor.— *Wade v. Killough*, 3 Stew. & Port. 431; *Larkin v. Bank*, 9 Port. 434; *Clemens v. Loggins*, 1 Ala. 622; *George v. Stockton*, 1 Ala. 136; *Tankersley v. Graham*, 8 Ala. 247; *Bird v. Daniel*, 9 Ala. 302; *Helvenstein v. Higgason*, 35 Ala. 259; *Eads v. Murphy*, 52 Ala. 520; *Chapman v. Lee*, 55 Ala. 616; *Lett v. Brown*, 56 Ala. 550; *Sivoly v. Scott*, 56 La. 555; *Strong v. Waddell*, 56 Ala. 473; *Munford v. Pearce*, 70 Ala. 452; *Franke v. Riggs*, 93 Ala. 252; *Johnson v. Oehmig*, 95 Ala. 189; *Jones v. State*, 100 Ala. 209; *Hickson v. Lingold*, 47 Ala. 449; *Martin v. Truss*, 50 Ala. 95; *Morris v. Morris*, 58 Ala. 443.

COLEMAN, J.—Barton B. Smith, the executor of the will of Henry F. Smith, without legal authority, sold to the defendant the timber growing upon certain lands of his testator. Under the contract, the defendant cut and converted a large quantity of timber, paid for the greater portion of it, and refused to pay for the balance. This suit was to recover that balance. Under the facts in the case, the court did not err in refusing charges No. 2 and 3 requested by the defendant. The essential facts upon which the plaintiff's right of action depends, are not materially controverted.

The legal questions are, can a vendee in possession of property of an estate, and who acquired possession of it under a purchase from an executor or administrator, retain that possession and defend, when sued for the pur-

chase money by his vendor, upon the ground that the
vendor administrator or executor, from whom he pur-
chased and received possession, had no authority to
make the sale, and could convey no title? The other
question is, when a person in possession of land, not
claiming it in his own right, sells the same for a consid-
eration, and puts the vendee in possession, can the ven-
dee defend against the recovery of the purchase price,
without surrendering possession, upon the ground, that
his vendor had no authority to sell, and conveyed no
title? At the time of the sale of the timber, the lands
were vested in the children of the testator, one of whom
and probably both had attained their majority, of full
age, but the executor had not settled the administration
of the estate. The decisions in this State are not con-
sistent, at least upon the first proposition. In the case
*Riddle v. Hill, Admx.*, 51 Ala. 224, the administratrix
Hill sued upon a promissory note given for four mules
sold by plaintiff as administratrix. The defense set up
in the plea was, in effect, that the mules belonged to the
estate of Charles W. Hill, and were sold by the plaintiff
without authority, and that the sale was void. In the
opinion the court declared, "as settled law, that a sale
of personalty made by an administrator without an
order of court, or under an order void on its face for
want of jurisdiction passes no title to the purchaser."
There is no conflict of authority that we know of under
our statute as to this proposition. This was all the plea
asserted. The court went further, however, and de-
clared that "it was also settled, that there can be no re-
covery on the purchaser's promise to pay the purchase
money on such sale," citing *Beene v. Collenberger*, 38 Ala.
647, and authorities there cited. In the case of *Beene v.
Collenberger, supra*, the facts showed, that Beene as the
administrator of Ellen Chapman, without authority,
sold two slaves to Collenberger and received the pur-
chase money. Subsequently the administrator *de bonis
non* of Ellen Chapman recovered from Collenberger the
slaves, the court holding that the sale by Beene was
without authority and null and void. After the recov-
ery of the slaves, Collenberger filed a claim for the pur-
chase money against the estate of Beene, who had died.
The question before the court was, as to the allowance
of the claim. There was really no question in the case

which called for an adjudication of the question under consideration in the present case. The court, however, did declare as a proposition *arguendo*, that Beene could not have maintained an action on the contract of sale to Collenberger, the sale being contrary to law ; citing in support of the proposition *Pettit v. Pettit*, 32 Ala. 288, and *Fambro v. Gantt*, 12 Ala. 298. The only principle decided in the case of *Pettit v. Pettit, supra*, bearing upon the question under consideration was, that the proceeds of a void sale òf land sold by an administrator are not assets of the estate. This question was fully considered and re-affirmed in the case of *Woods v. Legg*, 91 Ala. 511, where a distinction was drawn as to the proceeds of an unauthorized sale of personal property by an administrator and a void sale of realty. In the case of *Fambro v. Gantt, supra*, the decision of the case was rested fairly upon the proposition that an administrator could not coerce payment of the purchase money for an unauthorized sale of slaves made by him, that such a contract was unlawful and void in its inception, and that no right of action can arise from an unlawful act. This decision announces the proposition that though the sale was unlawful and void, the administrator could not recover back the property from the purchaser by an action in his own name, on the ground that he was estopped. The general rule is that estoppels are mutual, and we do not well see why the doctrine of estoppel should apply to the administrator, and not apply to the purchaser, and not estop him from denying the right of his vendor to recover. In the case of *Wilson, Admr., v. Armstrony*, 42 Ala. 168, the question came fairly before the court, and it was held that "the order of sale was void, and the plaintiff (who was the vendor) cannot recover the purchase money." Says the court : "We regret such is the law, yet it has been long so settled in this State.'' It would seem from the foregoing examination of the decisions, the question was fully settled in this State.

We propose next to examine some of the authorities which declare a different rule. In *Hickson, Extr. v. Lingold*, 47 Ala. 449, the action was upon notes given for the purchase of lands sold by the executors. The defense was that the lands were sold without authority. The court held that the defense could not be made if the purchaser retained possession of the land. The inva-

lidity of the sale was no defense to the action. Many decisions are cited in support of the proposition, among them that of *Harbin v. Levi*, 6 Ala. 399, in which it was declared that when a purchase is made from an administrator, and the property delivered under the sale, the purchaser can not defend upon the ground of an insufficient or defective title. It is said that "the general, if not the universal, rule is, that one in this condition is estopped from denying his vendor's title." And in *Ogburn v. Ogburn*, 3 Port. 126, also cited, it was held that a vendee of a slave in possession, could not retain the slave and defend on proof of want of title in the vendor. In this case the court declared, that as a vendee could not recover back the purchase money and retain the property, he was equally estopped from denying the vendor's title, when sued for the purchase money. The decision in *Hickson v. Lingold*, *supra*, has been cited with approval in many subsequent decisions of this court. *Bland v. Bowie*, 53 Ala. 152 ; *Sively v. Scott*, 56 Ala. 555 ; *Meeks v. Garner*, 93 Ala. 17. In *Morris v. Morris*, 58 Ala. 443, it is declared as a general proposition, in support of which many authorities are cited, that "the executor and purchaser from him cannot be heard to controvert the legality of their own sales and purchases, because each is estopped, so far as they are personally concerned." In the case of *Martin, Extr. v. Truss*, 50 Ala. 95, the action was upon notes given for the purchase money of land sold by the plaintiff as executor, and the defendant had been let into possession. It was held, that retaining the land, he could not defend on the ground that the sale was irregular, erroneous or even void. Others might be cited, but enough has been to show that the decisions are at variance. The principle prevails almost universally that where there has been a sale and delivery of property, and payment of purchase money, to authorize either party to rescind the sale, and recover back that which he has parted with, he must restore that which he has received ; and that a purchaser of property on a credit, retaining possession, can not defend when sued for the purchase price, upon the ground of fraud, mistake, want of title in his vendor, or invalidity of the sale. Estoppels are mutual. If the purchaser retains the property, he can not set up the invalidity of the sale, by which he acquires the possession,

[Union Stave Co. v. Smith.]

when sued for the price. Why should a different rule be applied to sales by executors and administrators? We can perceive no good reason for it. In the present case, there are other considerations also 'why the defendant should pay for the timber. The contract shows on its face that plaintiff sold the timber on the lands of the estate of Henry F. Smith. No doubt both parties supposed the executor had authority under the will; but whether this be true or not, the defendant was not deceived or imposed upon. It knew precisely what it was purchasing, and as matter of law knew whether the plaintiff had authority to make the sale. It cut and converted the timber under the purchase, retains the timber and refuses to pay the purchase money. Again, it is in evidence that the children were informed of the sale, have accepted in part the purchase money paid under the contract to plaintiff, and have given no evidence of any intention to dissent from the sale. The general charge requested by the defendant (No. 1) was properly refused. There is no error in the record.

Rehearing granted, former judgment set aside, and the judgment of the trial court affirmed.

Affirmed.

BRICKELL, C. J., *dissenting*.—There are several assignments of error raising questions not material in the view I am constrained to take of the case. The evidence adduced was directed to the fourth count of the complaint only, which is founded on an alleged breach of a contract in writing, by which the plaintiff bargained and sold to the predecessors in interest of the defendant, the growing white oak timber suitable for stave bolts, standing on the lands of Henry F. Smith, deceased, and granting the right to sever and remove it for the purpose of conversion into staves. The breach of the contract assigned, is the failure to pay the agreed prices of the timber. The will of Henry F. Smith was introduced in evidence, and nominates two executors, but the plaintiff alone appears to have qualified; and on these executors a discretionary power to sell the lands for the purpose of reinvestment is conferred.

The power of sale conferred by the will lends no assistance to the contract, for it will not admit of an interpretation or construction authorizing the sale of a partial

interest only in the lands of the testator. It contemplates and comprehends only a sale out and out of the entire estate in the lands. Besides, it is a discretionary power, which could not be exercised by one only of the executors, though he was the sole acting executor. *Tarver v. Haines*, 55 Ala. 503 ; *Mitchell v. Spence*, 62 Ala. 450 ; *Robinson v. Allison*, 74 Ala. 254.

An executor, unless the estate or interest be created by the will, like an administrator, takes no estate or interest in the lands of the testator. If the lands are devised, they pass to the devisee ; or if not devised, *eo in-instanti* the death of the testator, they descend to the heir. A personal representative, by statute, is clothed with authority to rent lands, and by the exercise of the power, the possession of the devisee or of the heir, may be intercepted ; and he is clothed with power to obtain from the court of probate orders or decrees for the sale of lands, and by the exercise of the power and a sale, the estate of the devisee or the descent to the heir may be interrupted. These powers do not vest in a personal representative any estate or interest in the lands ; and they must be exercised in the mode and manner the statutes appoint, or the possession of the heir or devisee can not be disturbed, or their estates or interests affected.—3 Brick. Dig. 464, §§ 146–151 ; 1 Brick. Dig. 937, §§ 332–33.

A sale of growing timber, by which a present transfer of title is intended, is a sale of an interest in lands ; if not in writing, it is offensive to the statute of frauds.— *Mitchell v. Billingsley*, 17 Ala. 391 ; *Heflin v. Bingham*, 56 Ala. 566 ; *Riddle v. Brown*, 20 Ala. 412. In its primary aspect, the case presents directly the question, whether a personal representative who has made a private sale of an interest in the lands of his testator or intestate, not having any other power than that which is derived from his office, may recover the purchase money ; and that question on authority and principle must be answered negatively. As we have said, *virtute officii*, a personal representative succeeds to no estate or interest in the lands of the testator or intestate. Powers derived from and dependent on the statute he may exercise ; but to these powers the statutes do not annex, and it is not essential to their due execution, that an estate or interest in the lands should have been annexed. An order or

[Union Stave Co. v. Smith.]

decree of sale may be obtained from the court of probate, but before granting it, the court must determine whether the necessity of sale the statutes prescribe exists; this determination is the function of the court, not of the personal representative; and a function not to be performed except upon evidence taken in the course of a judicial proceeding, to which the heirs or devisees are parties, having the opportunity to defend. The court must also determine at what place and upon what terms the lands are to be sold, and in no event, can it decree any other than a public sale, of which the statutory notice must be given. The sale must be reported to the court for confirmation; and after confirmation, before a decree of conveyance can be passed, there must be a report to the court of the payment of the purchase money. The sale is strictly and essentially judicial; the court is really the vendor, not the personal representative. The agency of the personal representative is that of a special officer or agent, designated by the law to perform special duties, and clothed with special trusts.—*Cruikshank v. Lattrell,* 67 Ala. 318, and authorities cited.

The bargain and sale was a nullity—absolutely void—because in contravention of the statutes prescribing the order or decree of a court of competent jurisdiction, as the sole and exclusive authority of a personal representative to make sale of the lands of a decedent. All the safeguards for the protection of the parties in interest these statutes so carefully provide, are vain and useless, if a contract of this character can be supported. The opportunity, and the temptation to fraud and wrongdoing on the part of a personal representative, of collusion with strangers, of the destruction of the inheritance of heirs, for his own profit, would be afforded. An executor or administrator is the exclusive representative, and has the exclusive legal title to the personal property or estate of a testator or intestate. A long line of decisions, reaching back more than fifty years, has settled the principle, and if he make sale of visible, tangible chattels, otherwise than under a regular order of the court of probate, the sale is void. He can not recover of the purchaser the purchase money, nor can he recover the chattels, though to the purchaser no title passes.— 1 Brick. Dig. 932, §§ 274–77; *Riddle v. Hill,* 51 Ala. 224. The decisions rest on the theory and reasoning,

that such sales are in contravention of the statutes; a dereliction of duty by the personal representative in which the purchaser participates, and to them the maxim, *ex turpi causa non oritur actio* applies. The theory and reasoning applies with equal force to the contract before us, by which a personal representative privately, without necessity, contracts for the conversion of the inheritance into money, of which he is to be the recipient.

In its real significance and essence, the contract is an agreement for the commission of a deliberate trespass. If the lands had been in the possession of a tenant of a particular estate, and the estate of the devisee had been a reversion or remainder, without being guilty of waste, the commission of which a court of equity would have enjoined, or for which compensation in damages would have been compelled, the tenant could not have severed and removed timber from the freehold, for the mere purposes of sale.—Tiedeman on Real Property, § 74; *Alexander v. Fisher*, 7 Ala. 514. There was no particular estate, no rightful possession intervening—the immediate estate and possession resided in the devisees. The contract intends an invasion of the possession; the forcible severance and removal of things affixed to and forming part of the freehold, a deliberate trespass. All contracts for the unlawful invasion of property, or rights of property, are illegal, offensive to public policy and sound morality.—*Renfro v. Heard*, 14 Ala. 22; *Moore v. Appleton*, 26 Ala. 633. The law leaves all who share in the illegality, where it finds them—it lends no aid to the enforcement of the contract while executory, nor after execution to its rescission, or to the restitution of whatever may have passed as its consideration.—*Clark v. Colbert*, 67 Ala. 92; *Williams v. Higgins*, 69 Ala. 517.

The court below, in my judgment, erred in refusing to instruct the jury, on the evidence, to find a verdict for the defendant.