396        SUPREME COURT        [Vol.

[Mayor and Aldermen of the City of Ensley v. Hollingsworth & Co.]

# Mayor and Aldermen of City of Ensley *v.* Hollingsworth & Co.

## *Assumpsit.*

(Decided April 20, 1910.    Rehearing denied Dec. 22, 1910.
54 South. 95.)

1. *Contracts; Actions; Complaint.*—Where the complaint is on an express contract it is sufficient if it avers the contract in substance and a performance thereof by the plaintiff, and a failure by the defendant to pay the sum therein stipulated; it is not necessary that the contract be set out in haec verba.

2. *Frauds; Statute of; Complaint; Requisites.*—In an action on an express contract, good at common law before the enactment of the statute of frauds, the complaint need not aver that the contract is in writing; it is sufficient if the writing is produced in evidence at the trial.

3. *Appeal and Error; Review; Instructions.*—To obtain a review on appeal of the action of the trial court in giving or refusing instructions, it is necessary that such obstructions be presented by bill of exceptions.

4. *Municipal Corporations; Public Improvement; Contract for; Fraud; Evidence.*—Where the action was on a contract for the construction of sanitary sewers for the city, and it appeared that the contractor was a firm, a member of which was a member of the city council at the time of the execution of the contract, it was relevant to show, on the issue of fraud in procuring the contract, other bids for the same work.

5. *Same; Plea.*—Where the action was on the contract for the construction of sanitary sewers for the city and the plea was that the plaintiff's bid had been fraudulently changed after making the contract, from forty cents per wye to a dollar forty, per wye, it was competent to show by a bidder that his bid of eighty cents per wye was the highest bid, as tending to show that plaintiff's bid had been changed.

6. *Same; Individual Interest of Officer.*—In the absence of a statute forbidding it, a contract made by the city council with a firm, a partner in which was a member of the city council at the time, for the construction of public improvements, is not invalid, where it was free from fraud and where the partner did not vote on the proposition nor take any part in behalf of the city in making the contract.

7. *Same; Contract; Validity.*—Section 1193, Code 1907, was enacted after the making of the contract in this case, and hence, does not apply to it.

8. *Evidence; Documents; Preliminary Authentication.*—The final statement of the city engineer relative to the sanitary sewer construction for the city was not admissible in an action on the con-

[Mayor and Aldermen of the City of Ensley v. Hollingsworth & Co.]

tract for the price thereof, in the absence of proof of the correctness of the statement, by the engineer or someone having knowledge thereof, or of an admission by the city.

(Dowdell, C. J., Sayre and Evans, JJ., dissent in part.)

APPEAL from Jefferson Circuit Court.

Heard before Hon. A. A. COLEMAN.

Assumpsit by J. E. Hollingsworth & Company against the mayor and aldermen of the city of Ensley. Judgment for plaintiff and defendant appeals. Reversed and remanded.

ROMAINE BOYD, for appellant. The court erred in sustaining demurrers to plea F, as the law does not permit a public official to enter into binding contracts with official boards of which he is a member.—*Wardell v. U. P. R. R. Co.,* 103 U. S. 568; 15 A. & E. Enc. of Law, 975-6, and cases there cited; Abbott's Mun. Corp. p. 569-72. The contract was void as offensive to the public policy and violative of the laws of the state.—*Hauerwas v. Goodloe,* 101 Ala. 163; 2 Mayf. 793; *Buthenthal v. Headland,* 132 Ala. 249; *Meyer-Mark Co. v. Ensley,* 141 Ala. 602; *Allen v. Intendent,* 89 Ala. 641. The object of the rule is not to punish but to prevent an illegal transaction.—*Union S. Co. v. Smith,* 116 Ala. 427; *Campbell v. Siggers,* 81 Ala. 261; 9 Cyc. 546-8; 15 A. & E. Enc. of Law, 999. The court should have sustained demurrers to the 4th, 5th, and 6th counts.— 4 Enc. P. & P. p. 822. The court erred in refusing charge 9.—*Stevenson v. Wright,* 111 Ala. 585; *Marks v. Robinson,* 82 Ala. 83; *Carter v. Chambers,* 79 Ala. 273. The court erred in excluding the minutes of the city council as to the totals of other bids.—*Robichauex v. Segura Sugar Co.,* 34 So. 744; 16 Cyc. 114. The court erred in excluding proof of other bids.—14 A. & E. Enc. of Law, 195. Counsel discuss other matters not necessary to be here set out.

[Mayor and Aldermen of the City of Ensley v. Hollingsworth & Co.]

JAMES A. MITCHELL, and FRANK DEEDMEYER, for appellant. The 5th and 6th counts were amply sufficient under our rules of pleading, as the substance of the contract was set out therein. There is nothing in the charter of the city of Ensley prohibiting the contract here made.—Acts 1900-01, p. 247; hence the court properly sustained demurrers to plea F.—20 A. & E. Enc. of Law, 1178; 28 Cyc. 650; 15 L. R. A. 520. Counsel then classify the cases bearing upon the questions of the validity of the contract as follows:  Cases wherein the contract is declared void, because contrary to a positive statute:  *Milford v. Milford Water Co.*, 124 Pa. 610, 3 L. R. A. 122; *Dwight v. Palmer*, 74 Ill. 295; *Mulaly v. New York*, 3 Hun. 661; *McGregor v. Logansport*, 79 Ind. 176; *Burka v. Woodward, Treasurer*, 125 Cal. 119, 45 L. R. A. 420; *Finch v. Riverside, etc. R. R. Co.*, 87 Cal. 597; *Capron v Hitchcock*, 98 Cal. 427, 33 Pac. 431; *Fort Wayne v. Rosenthal*, 75 Ind. 136, 39 Am. St. Rep. 127; *Texas Anchor Fence Co. v. San Antonio* (Tex.), 71 S. W. 301; *Northport v. Northport Townsite Co.*, 27 Wash. 543, 68 Pac. 204; *McManus v. Sheele*, 116 La. 72, 40 So. Rep. 535; *Commonwealth v. DeCamp*, 117 Pa. St. 112, 35 Atl. 601; *West v. Perry*, 98 Ga. 402, 25 S. E. 508; *Pace v. Johnson*, 91 Ind. 477; *Benton v. Hamilton*, 110 Ind. 294, 11 N. E. 238; *Munnemacher v. Louisville*, 98 Ky. 334, 32 S. W. 1091; *Macey v. Duluth*, 68 Minn. 452, 71 N. W. 687; *Stone v. Bevins*, 88 Minn. 127, 97 Am. St. Rep. 666; *Land, etc., Co. v. McEntyre*, 100 Wis. 245, 69 Am. St. Rep. 915; *Harrison v. Elizabeth*, 70 N. J. L. 591, 57 Atl. 132; *Foster v. Cape May*, 60 N. J. L. 78, 36 Atl. 1089; *Hardy v. Gainesville*, 121 Ga. 327, 48 S. E. 921; *Goodrich v. Waterville*, 88 Me. 39, 33 Atl. 659; *Stroud v. Consumers' Water Co.*, 56 N. J. L. 422, 28 Atl. 578; *Santa Anna Water Co. v. San Buena Ventura*, 65 Fed.

323; *Roosevelt v. Draper,* 23 N. Y. 318; *Nuckols v. Lyle,* 8 Idaho, 589, 70 Pac. 401; *City of Winchester v. Frazer,* (Ky.) 43 S. W. 453; *Com. v. Commissioners of Phila. County,* 2 Serg. & R. (Pa.) 193; *Smith v. Albany,* 61 N. Y. 444; *Beebe v. Sullivan County,* 19 N. Y. Sup. 629. Cases where the contract was held void because the officer with whom it was made, actually voted for, or otherwise participated in the making of, the contract on the part of the municipality: *Holderness v. Baker,* 44 N. H. 414; *Drake v. Elizabeth,* 69 N. J. L. 190, 54 Atl. 148; *Burkett v. Athens,* (Tenn.) 59 S. W. 667; *Pickett v. Wiota School Dist.,* 25 Wis. 551, 3 Am. Rep. 105; *Ft. Wayne v. Rosenthal,* 75 Ind. 156, 39 Am. Rep. 127; *People v. Township Board of Overyssel,* 11 Mich. 222; *Snipes v. Winston,* 126 N. C. 374, 78 Am. St. Rep. 666; *Brown v. Street Lighting Dist,* 71 N. J. L. 79, 58 Atl. 115; *West Jersey Traction Co. v. Camden,* 58 N. J. L. 43, 29 Atl. 162; *Stroud v. Consumers' Water Co.,* 56 N. J. L. 422, 28 Atl. 575; *Santa Anna Water Co. v. San Buena Ventura,* 65 Fed. 323; *San Deigo v. San Deigo & L. A. R. Co.,* 44 Cal. 106; *Trainer v. Wolf,* 140 Pa. St. 279, 21 Atl. 391. Cases which do not come within either of the above principles, and the contract has been held valid. There are numerous cases, where there was no statute declaring the contract void or illegal, and where the officer with whom the municipal body contracted did not vote for or otherwise participate in the making or awarding of the contract on behalf of the corporation, and the contract was held valid and enforceable.—*Tucker v. Howard,* 122 Mass. 529; *Albright v. Town Council of Chester,* 9 Rich. Law (S. C.) 399; *Marshall v. Ellwood City Borough,* 189 Pa. St. 348, 41 Atl. 994; *Klenn v. Newark,* 61 N. J. L. 112, 38 Atl. 692; *Evans v. Trenton,* 24 N. J. L. 764; *Niles v. Muzzy,* 33 Mich. 61, 20 Am. Rep. 670;

*McBride v. Grand Rapids,* 47 Mich. 237; *Detroit v. Redfield,* 19 Mich. 376; *Boggs v. Caldwell County,* 28 Mo. 586; *Board of Com'rs v. Mitchell,* (Ind.) 15 L. R. A. 520.

DOWDELL, C. J.—The complaint contained the common counts, and two special counts on an express contract. The contract was not set out in hæc verba, but was declared on as to its legal effect. A demurrer was interposed to the special counts assigning as grounds the failure to set out the contract in full in the complaint, and the failure to aver whether the contract as declared on was verbal or in writing. Neither of these two grounds is tenable. The complaint averred the contract in substance, and a performance of the same on the part of the plaintiffs, and the only breach alleged was the failure of the defendant to pay the sum stipulated to be paid. This was a sufficient statement of the plaintiffs' cause of action without setting out the contract in hæc verba. "The general rule is that, if a contract would have been good at common law before the passage of the statute of frauds, it is not necessary to aver that it is in writing. It is sufficient if the writing be produced in evidence at the trial."—*Brown v. Adams,* 1 Stew. 51, 18 Am. Dec. 36, 9 Cyc. 715.

The contract sued on is set out in the bill of exceptions. It is an admitted fact that J. E. Hollingsworth, one of the plaintiffs in this suit and a member of the partnership of J. E. Hollingsworth & Co., with whom the contract was made, was at the time of the making of the contract an alderman and member of the council of the defendant municipality. The subject-matter of the contract as the construction of sanitary sewers for the city. Bids for the work were advertised for, and

in response to the call there were eight bidders, the plaintiffs being one of them. The plaintiffs' bid was accepted, and the contract sued on was made. The charter of the city of Ensley (Acts 1900-01, p. 247) conferred upon the mayor and council the authority to provide for the construction of sewers for the city and conferred upon them the power of contracting to that end. Under these charter powers, it became and was the duty of the plaintiff J. E. Hollingsworth as an alderman and a member of the council to act for and in the interest of the municipality in providing for the construction of the sewers and in the making of the contract for that purpose. His office and duty were public, and his relations to the municipality in regard to the matter of the contract were in the highest sense of a fiduciary nature. He occupied a position, which in the making of the contract brought in conflict his private, personal interests with his public duty. It would be but natural for him as an individual to be prompted by self-interest to obtain a contract most favorable to himself. On the other hand, it was his duty as a public officer to act with sole regard to the public interests. It is a case where self-interest and public duty are directly opposed. Such contracts are forbidden by public policy. Treating of this subject in 9 Cyc. 493, it is said: "Another class of agreements which are within the rule are those between a state, a county, or other municipal corporation for the doing of work or the furnishing of supplies with one of its own officers or with a company or body of men of which such officer is one, or in which he is interested." In the note to this text many cases are cited, and among them one of our own—the case of *McGehee v. Lindsay*, 6 Ala. 16 —which is directly in point. See, also, 15 Am. & Eng. Ency. Law (2d Ed.) pp. 975, 976, where, also, many cases are cited in the note.

It is of no moment that the plaintiff J. E. Hollingsworth was not present, or that "he did not vote upon the acceptance of his bid," at the meeting of the council when the bids were canvassed and the acceptance made. It was his duty as a member of the council to attend such meeting. The very fact of his absence and failure to render that public service which his public office required of him, if occasioned by reason of his being interested in the bids, fully demonstrates the wisdom of the law in pronouncing all such contracts void on grounds of public policy.

The contract being void for the reasons and upon the grounds stated, the plaintiffs are not only without a right of action on the contract itself, but cannot maintain an action upon the quantum meruit for work done, or upon the quantum valebat for materials furnished. The transaction itself out of which the contract springs falls under the ban of the law. It comes within the class, and upon like principles, of contracts that are expressly prohibited by statute. The illegality affects the entire transaction, and out of it no cause of action arises.—*McGehee v. Lindsay, supra; Hill v. Freeman,* 73 Ala. 200, 49 Am. Rep. 48; *Clark v. Colbert,* 67 Ala. 92; 9 Cyc. 546, where many other cases are cited to the text in the note.

A distinction has been taken by the courts between contracts void because violative of the statute opposed to public policy, and those that are merely ultra vires or that are merely unauthorized by law. While in the former no right of action arises either upon the contract itself, or the transaction out of which it springs, in the latter case although no action may be had upon the express contract, still where money or property has been received under the contract and beneficially applied to authorized objects or purposes under the law,

[Mayor and Aldermen of the City of Ensley v. Hollingsworth & Co.]

an action of implied assumpsit may be had.—*Bluthenthal v. Headland*, 132 Ala. 249, 31 South. 87, 90 Am. St. Rep. 904; *Allen v. Intendent, etc.*, 89 Ala. 641, 8 South. 30, 9 L. R. A. 497.

In this case the rulings of the trial court were opposed to the views we have expressed, and since what we have said is sufficient for the purposes of another trial, and on the conceded facts in our opinion conclusive of the litigation, it is unnecessary to consider any of the other questions presented on the record.

Reversed and remanded.

ANDERSON, McCLELLAN, and SAYRE, JJ., concurring.

On Application for Rehearing.

DOWDELL, C. J.—In their brief and argument for a rehearing in this cause counsel say that the point on which we decided the case, namely, that the contract sued on was void, they did not discuss in their original brief, "believing that it was not insisted on," and now ask for a careful consideration of their brief on this point. It was, however, strenuously insisted on by opposing counsel for appellant in their original brief upon the submission of the cause. They say: "Furthermore, we did not discuss the question, for the reason that it has been prior to the adoption of the present Municipal Code, a general practice for municipal corporations in Alabama to enter into contracts for public improvements with members of the governing body." We know nothing of such a practice, and we fail to appreciate the force of the suggestion arguendo when such a practice upon common-law principles is opposed to public policy.

It is further claimed by counsel, but only in their "belief," that under section 17 of the charter of the

city of Ensley, which provides: "That no member of the board of mayor and city council shall be entitled to a vote on any question in which he or his employer has a special financial interest, at the time of voting, or was so interested at the time of his election"— a member of the city council was impliedly authorized to enter into contracts with the city, provided he did not vote on the question.

The unsoundness of this proposition is apparent. There is no express legislative authority contained in the quoted section of the charter authorizing the municipality to enter into contracts with a member of the board of mayor and city council. This is conceded. In the construction of charters the elementary rule is that the grant as to powers is construed in favor of the grantor, the state, and against the grantee, the municipality, and implied power or authority under the grant must and can result only from necessary implication. There is no room in the present instance for necessary implication of granted authority on the part of the municipality to enter into such contracts with members of the council. The quoted provision in the charter is a mere prohibition on a member of the council voting upon a question in which he is financially interested, and contains no suggestion of power or authority on the part of the city to enter into contracts with members of the council. If anything can be taken by implication from the quoted provision of the charter, it would more reasonably seem to be that one, after becoming a member of the council should avoid the embarrassment of becoming financially interested in questions before the council.

Counsel seem to find fault with our citations from 9 Cyc. and 15 American & English Encyclopædia of Law, and for reasons which do not even seem plausible

to us. To quote from their brief, they say: "The quotation, in the opinion handed down by this court from 9 Cyc. 493, is from the article on Contracts, under the subhead, 'Agreements Contrary to Public Policy,' and there was merely an attempted enumeration of classes of contracts coming under that head; and there was no attempt to clearly state under what circumstances contracts made by municipal bodies with its officers, are void. The quotation from 15 American & English Encyclopædia of Law, pp. 975, 976, is from the article on 'Illegal Contracts,' under the same subhead as above; and here again there is no attempt to make an accurate statement of, the law on the question."

The subject with which we are dealing is "illegal contracts," and illegal because "contrary to public policy." It is difficult to conceive under what more appropriate heads we would search for information and authority in text-books, digests, or encyclopædias of law. And as for that matter it is unimportant under what head the question may be treated, if the law as stated is sound. In support of their view counsel cite us to and quote from 20 American & English Encyclopædia of Law, p. 1178, and 28 Cyc. 650, under the head of "Municipal Corporations"—a very general subject we might add—and, at the expense of brevity in this opinion, we will here quote the cited authorities:

20 Am. & Eng. Ency. Law, p. 1178: "In the absence of charter restrictions a municipal corporation may validly enter into contracts with its own officials. As a usual thing, however, a city is prohibited from entering into contracts in which any of its officials have a pecuniary interest, and contracts made in violation of such provisions are invalid."

28 Cyc. 650: "A public office is a public trust, and the trustee may not contract with himself personally;

nor may a member of the council or board vote upon a contract in which he is personally interested; municipal contracts entered into with officers of the corporation in violation of these fundamental doctrines, or of a statute or charter provision, declaring such rule, are void, and no action lies thereon."

20 American & English Encyclopædia of Law, as authority for the statement quoted above, viz., "In the absence of charter restrictions a municipal corporation may validly enter into contracts with its own officers," under note 7 cites but one case, and that is *Cummins v. City of Seymour,* 79 Ind. 491, 41 Am. Rep. 618. We have examined this case and find that it was a suit by the plaintiff against the city to recover damages resulting from the digging of a ditch which the city had caused to be dug. The question we have here under consideration was not involved in the case, and there is nothing, we think, in that case, to warrant the general statement made in the text quoted above. As to the quotation from 28 Cyc. above set out, we venture no further comment than to say that it unmistakably supports the views expressed, and conclusions reached, in our first opinion in this case.

Counsel in their brief, under the headlines (quoting from their brief), "Cases, wherein the contract is declared void, because contrary to positive statute," cite a large number of cases in support of the principle contained in the stated headlines. We have no fault to find with this proposition. No one doubts that a contract made in violation of a positive statute is void, and, furthermore, that no cause of action can spring from such a contract. And that a contract in violation of a positive statute is void, is no argument against the proposition that a contract that is violative of public policy at common law is likewise void. On the con-

trary, the two propositions in principle go hand in hand. The positive statute is but an express legislative declaration of public policy. It is often the case that a statute is but a declaration of the law as it previously existed—simply a legislative affirmation of the common law.

Counsel in their brief, under the headlines, "Cases where the contract was held void because the officer with whom it was made actually voted for, or otherwise participated in the making of, the contract on the part of the municipality," cite many cases in support of the principle involved in the quoted lines from brief. We made no issue with this proposition, and we are in full accord with the soundness of the adjudications which hold a contract void upon the grounds stated. But we fail to see in all of this any argument or sound reason for holding that a contract made by and between a municipality and one of its governing board whose duty it was to make all contracts of the municipality, is not opposed to public policy, and for that reason void.

Again quoting from brief of counsel: "Cases which do not come within either of the above principles, and the contract has been held valid." Under this head 10 cases are cited. In all of these cases there are only two which we think sustain the contention of counsel, and those are the cases of *Albright v. Town Council of Chester,* 9 Rich. Law (S. C.) 399, and *Niles v. Muzzy,* 33 Mich. 61, 20 Am. Rep. 670. We think, however, the facts in the last-mentioned case differentiate that case from the case now under consideration. Under the issues and facts in the cited case of *Tucker v. Howard,* 122 Mass. 529, we hardly think that case one in point. The case of *Klemm v. Newark,* 61 N. J. Law, 112, 38 Atl. 692, does not support, and the principles stated

are as we understand them opposed to, the contention of counsel. In the case of *McBride v. Grand Rapids,* 47 Mich. 237, 10 N. W. 353, and *Detroit v. Redfield,* 19 Mich. 376, the persons contracted with were not members of the council or governing board of the municipality, and in this respect, at least, the cases are differentiated from the case before us. The other cited cases we do not regard as in point; so of the 10 cases cited there may be said to be not more than 2 that are directly in point as authorities sustaining the contention of counsel.

It is insisted by counsel that the enactment of section 1194 of the Code of 1907, constituting a part of what is known as our Municipal Code, and which now prohibits the making of such contracts as the one under consideration, "goes to show that the lawmaking body of this state considered that a statute was necessary to make such contracts illegal," and as the contract before us was entered into prior to said enactment it should be held valid and binding. The reasoning is unsound. While it is within legislative competency by express statute to declare such contracts illegal or legal, how the lawmaking body may have "considered" such contracts as to their validity vel non at the common law, is of no importance, as this was a matter of construction, and within the province of the judiciary. Moreover, as we have before said, statutes often are but declarations of the law as it previously existed.

In the case of *Gibbons v. Mobile & Great Northern Railroad Co.,* 36 Ala. 410, cited by counsel, there was express legislative grant of power and authority to the city of Mobile to make the contract with the railroad company, and this fact saved the contract from illegality on the grounds of public policy. The Legisla-

ture, in the grant of the authority to make the contract, determined the question of public policy. The opinion in the case of *Gibbons, supra,* concludes as follows: "We think, that the power conferred on the corporate authorities of the city of Mobile, to aid in the construction of the Mobile & Great Northern Railroad, under such contract with said Mobile & Great Northern Railroad Company as said city authorities might agree upon, must be construed as conferring the authority to make the contract on whoever may be the mayor, aldermen and common council of said city at the time the contract is entered. into; and that in the absence of actual bad faith, the fact that certain members of the boards of aldermen and common council are also stockholders in the railroad company, does not per se invalidate the contract." This case of our own, cited and relied on as an authority by counsel for appellee in their application for a rehearing, is far from supporting counsel in their contention.

Having examined the cases and, authorities furnished in brief of counsel for appellee, on the question of the validity of the contract, we will now consider the case from the opposite view, and doing so, will to some extent be compelled to repeat what was said in our first opinion. First of all, we recur to one of our own cases, *McGehee v. Lindsay,* cited in our former opinion, and which was decided as far back as 6 Alabama (page 16), and as being a case directly in point, and which has never been departed from in subsequent decisions by this court. There is another case of ours, still further back, and cited approvingly in *McGehee v. Lindsay, Carrington v. Caller,* 2 Stew. 175, in which a similar contract is declared void as opposed to public policy. Much that is said in these two cases might be repeated here in argument, but to do so would unduly

prolong this opinion. But at the risk of being tedious we quote the following from *McGehee v. Lindsay, supra*, as apposite in facts and principle to the case at bar: "The plaintiff, together with two others, is deputed by the state to perform a public trust, and to that end is authorized to enter into a contract to have certain work done at the lowest price; himself and associates are to supervise the work, and to pay for it by checking upon the public funds, which were made subject to his order. He enters upon the discharge of the trust, lets out the work; but himself and one of his associates are interested in the contract, to the extent of one-eighth ($\frac{1}{8}$) each. Here is a striking departure from the line of duty; he had stipulated with the state and pledged himself to exercise his disinterested skill, diligence, and zeal for its exclusive benefit in the business. His interest became adverse to that of the state whenever he assumed the twofold character of contracting and being contracted with. He was required by the statutes under which he acted, to have the work well done and on the best terms; yet he was interested in having it done in such manner as was least expensive to the company with which he had associated, and most expensive to the state. His participation in the contract without the assent of the state was a fraud, no doubt, detrimental to its interests."

Here the plaintiff is a member of the council—the governing board of the municipality—whose duty it is to make such contracts as the one under consideration, and to do so in the interest of the city, and to guard the city's interest in their performance. And yet he is the party contracted with whose personal gain and private interest place him in an antagonistic position to his public duty. Can it for a moment be doubted that such transactions are opposed to public policy? The

doctrine contained in the cases above cited finds support in the following cases, also, from our own court, viz.: *Bluthenthal v. Headland,* 132 Ala. 249, 31 South. 87, 90 Am. St. Rep. 904; *Meyer-Marx Co. v. Ensley,* 141 Ala. 602, 37 South. 639; *Union Stave Co. v. Smith,* 116 Ala. 426, 22 South. 275, 67 Am. St. Rep. 140. In the case of *Wardell v. U. P. R. R. Co.,* 103 U. S. 658, 26 L. Ed. 509, where the directors of the railroad company were interested in contracts made with the company, the same principle is declared. The reason for applying this doctrine in cases of public officials are just as cogent, if not more so, as in cases of trustees in private corporations. The moral and ethical principles involved are the same. The resultant evils of a violated public trust are perhaps more far-reaching than in the case of a private trust.

The following cases in other jurisdictions are, as we think, directly in point and fully support the doctrine as stated in our original opinion in this case: *Nunemacher v. City of Louisville,* 89 Ky. 334, 32 S. W. 1091; *Grand Island Gas Co. v. West,* 28 Neb. 852, 45 N. W. 242; *Beebe v. Board of Supervisors of Sullivan County,* 64 Hun. 377, 19 N. Y. Supp. 629; *Smith v. City of Albany,* 61 N. Y. 444.

The doctrine as to contracts violative of public policy is thus stated in 15 American & English Encyclopædia of Law, pp. 975, 976: "The rule of public policy which prohibits a public officer from placing himself in a position whereby his individual interest is in opposition to his official duty has often been applied to cases where public officers, empowered to contract for services, or the performance of other work, or the furnishing of supplies, contract with themselves therefor. And where the procurement of services to be performed for a public corporation is intrusted to several offi-

cers (as, in the case before us, to the mayor and board of aldermen) it is equally against public policy to permit one of such officers to contract therefor, *though he takes no action as an officer on the question of his employment.*" (Italics ours.) And therefore, as was said in our original opinion, the fact that Hollingsworth, the plaintiff, did not, as a member of the council, vote on the question of letting the contract to himself, cannot vary the rule of public policy in such cases.

The doctrine is stated as follows in 1 Abbott's Municipal Corporations, p. 569 et seq.: "An officer, agent or employee of a public corporation occupies as towards such corporation what is termed a fiduciary or trust relation. This same relation exists as between the officers of a private corporation and the corporation, and should apply in an intensified degree to public officials or employees. In a decision by the Supreme Court of the United States the court in discussing the impossibility and inconsistency of one person representing, or attempting to represent, personal and adverse interests in the same transaction said: 'The general rule stands upon our great moral obligation to refrain from placing ourselves in relations which ordinarily excite a conflict between self-interest and integrity. It restrains all agents, public and private; the disability is a consequence of that relation between them, which imposes on the one a duty to protect the interest of the other, from the faithful discharge of which duty his own personal interest may withdraw him. In this conflict of interest the law wisely interposes. It acts not on the possibility that in some cases the sense of that duty may prevail over the motives of self-interest, but it provides against the probability in many cases, and the danger in all cases, that the dictates of self-interest will exercise a predominant influence, and supersede that

of duty.' The courts therefore hold uniformly to the rule that contracts executed by and in behalf of a public corporation in which the officers so executing them may directly or indirectly have a beneficial interest are absolutely void. This rule is necessary for the protection of the public funds from dishonest and scheming public officials. And, as further emphasizing the rule suggested, many states contain statutory provision to the effect that public officials or agents shall not be directly or indirectly interested in any present or future contract they may make on behalf of the public corporation they represent."

In contracts like the one before us, where, in their performance, the city engineer (who himself is elected by the council of which the contractor is a member) is required to make progress estimates on work done and materials furnished, and is subjected to influences from personal consideration which might·cause him to fail in coming up to the measure of his duty to the city in making his reports, the frailty of human nature might incline him to a leniency detrimental to the city's interest. We think both on sound reasoning and the weight of authority that the contract in question is void as being opposed to public policy.

It is next insisted that even if the contract sued on is void for the reasons stated, a recovery should nevertheless be allowed on the common counts upon the quantum meruit. In most of the cases cited by counsel to this point we find on examination that the facts differentiate them from the present case, notably the case of *Spearman v. Texarkana*, 58 Ark. 348, 24 S. W. 883, 22 L. R. A. 855; *Call Pub. Co. v. Lincoln*, 29 Neb. 149, 45 N. W. 245; *Buck v. Eureka Co.*, 109 Ala. 504, 42 Pac. 243, 30 L. R. A. 409; *Capitol Gas Co. v. Young*, 109 Cal. 140, 41 Pac. 869, 29 L. R. A. 463. In the first

of the foregoing cited cases, the party was not a member of the council, but of a board of health created by the council; in the last-cited case (109 Cal. 140, 41 Pac. 869, 29 L. R. A. 463), the company in which the mayor was a stockholder, was bound on demand to furnish the gas, and for the supply of which the suit was brought, and there was no express contract entered into.

It should be borne in mind that there is a distinction between contracts void as violative of a statute or because offensive to public policy, and contracts which are void because in excess of corporate power—ultra vires—in respect to a recovery on the quantum meruit. This distinction is well recognized in adjudicated cases. In the latter class, where the corporation has received benefits which have been applied to authorized objects under an ultra vires contract, although no action can be had upon the contract, a recovery may be had on the quantum meruit (*Allen v. Intendent,* 89 Ala. 641, 8 South. 30, 9 L. R. A. 497); but in the former class, where the contract is illegal because in violation of a positive statute, or being offensive to public policy, no action can arise out of the transaction for any purpose. The distinction was taken by this court in the recent case of *Bluthenthal v. Headland,* 132 Ala. 249, 31 South. 87, 90 Am. St. Rep. 904, where it was said: "Municipal corporations are liable to actions of implied assumpsit with respect to money or property received by them and applied beneficially to their authorized objects through contracts which are simply unauthorized as distinguished from contracts which are prohibited by their charters, or some other law bearing upon them, or are malum in se, or violative of public policy." This was cited approvingly in the still more recent case of *Meyer-Marx Co. v. Ensley,* 141 Ala. 602, 37 South. 639.

To hold in this case that a recovery may be had on the quantum meruit—an action of implied assumpsit—would require the overruling of the case of *Bluthenthal v. Headland, supra,* a case sustained both by reason and authority. To permit the rule contended for would open wide the door to fraud. In the letting of contracts or bids, a dishonest officer might underbid all the others, knowing that his contract was void and not binding on him, and rest his right of recovery on an action of implied assumpsit, and in this manner defeat the municipality in having work performed on more advantageous terms upon a contract basis with others. It is suggested that in this he would be estopped by his contract. But this suggestion is untenable. Estoppels must be mutual, and illegal contracts, as the one under consideration, furnish no basis for estoppel. "An unlawful or illegal contract executed by a public corporation is incapable of enforcement. It is absolutely void and neither the doctrine of estoppel nor satisfaction can be invoked to maintain it. The strict rule of law applying to ultra vires contracts of corporations as followed by the English courts and the federal courts in this country is strictly applied to the acts of public corporations."—1 Abbott's Municipal Corporations, p. 577, and authorities there cited.

Justices Simpson, Anderson, McClellan, and Mayfield, constituting a majority of the court, are however of the opinion, and so hold, that the contract in question is not void as against public policy.

The writer dissents from this holding, for the reasons already stated above and on the authorities cited. Justices Sayre and Evans concur in the writer's views and opinion.

The holding of the majority requires consideration of other questions presented by the assignments of error on the record.

The assignments of error relating to charges given and refused, and discussed by counsel for appellant, are, however, not to be considered by us for the reason that the bill of exceptions contains no charges given or refused. There are charges copied in the record, but not in the bill of exceptions, and questions for review on appeal on charges given or refused can only be presented by bill of exceptions.

As to the rulings of the trial court on the introduction of evidence, under the issues as framed, and on the theory upon which the case was tried, many of the rulings excepted to on grounds of irrelevancy were unobjectionable.

Under plea C and plea 4, questions of fraud were in issue, and evidence of other bids on the same work was relevant and should have been admitted.—16 Cyc. 114.

"The nature of fraud is such that it can seldom be established by direct and positive evidence. Generally it must be inferred from the facts and circumstances attending the particular transaction. It is the rule, therefore, that in cases of fraud great latitude is to be allowed in the admission of evidence."—14 Am. & Eng. Ency. Law, p. 195. The court therefore should have admitted evidence of other bids on wyes and totals. The plea averred that plaintiff's bid after the contract was made had been fraudulently changed from a bid of 40 cents per wye to $1.40 per wye. For the same reason the evidence of the witness Zuber, as to his recollection that his bid on wyes at 80 cents per wye was the highest bid, should have been admitted. This evidence would tend to show that the plaintiffs' bid on wyes had been changed.

The final statement offered in evidence by the plaintiffs as having been made by the engineer Byrne, in the

absence of proof of correctness of the same by Byrne or some one else having knowledge of its correctness, or of an 'admission by the defendant, should not have been allowed in evidence against the objections of the defendant.

There were many exceptions reserved, of a similar kind, relating to evidence as to bids made by others than the plaintiffs, the amounts of such bids, also to the value of wyes included in the bids, etc., as to all of which it may be said in a general way that, under issues of fraud, this evidence was relevant. The question of values was pertinent and relevant under the issue on the common count for materials, goods, wares, and merchandise, etc., furnished.

It is unnecessary to discuss in detail other questions raised on exceptions to rulings on the evidence, as many of them may not arise again, and what we have said we think will be sufficient guide on another trial.

For the errors indicated the judgment of reversal must stand, and the application is denied. The first opinion, while adhered to by the writer, is modified to conform to the views of the majority of the court as stated above in reference to the right of action of implied assumpsit.

SIMPSON, J.—This is a suit, by appellees against appellants, on a contract to construct a system of sanitary sewers, etc. Said Hollingsworth was a member of the city council, but did not vote on the question of the awarding of the contract, which was let by taking competitive bids.

It is claimed by the appellants that said contract is void, as being contrary to public policy. The decisions that contracts by a municipal council with a member of the council are invalid as being contrary to public

policy are based upon the familiar principle that an agent, or a person holding an official position, cannot make a contract with himself; but the authorities do not go to the extent of holding that all such contracts are void, though free from fraud, and though the member with whom the contract was made did not vote on the proposition, nor take any part in behalf of the city in making the contract.

In our own case of *McGehee v. Lindsay*, 6 Ala. 16, the chairman of the board of commissioners joined in the letting of the contract to parties with whom he claimed to have an agreement that he was to share in the profits, and he sued the contractors for his share of the profits. It was properly held that he could not recover.

The case of *Carrington v. Caller*, 2 Stew. 175, rested on the principle that the consideration of the contract, to wit, an agreement to prevent competition at a public government sale, was illegal.

In the case of *Meyer-Marx Co. v. Mayor, etc., of Ensley*, 141 Ala. 602, 37 South. 639, the consideration of the note was not only ultra vires, but illegal, to wit, to allow a man to proceed in selling liquors without having paid a license. Consequently, no recovery could be had on the note.

The case of *Union Stave Co. v. Smith*, 116 Ala. 426, 22 South. 275, 67 Am. St. Rep. 140, decides only that an executor, while retaining possession of the property, cannot resist a suit for the purchase money on the ground that he (the executor) had no authority to sell.

The cases of *Nunemaker v. City of Luisville*, 98 Ky. 334, 32 S. W. 1091; *Grand Island Gas Co. v. West*, 28 Neb. 852, 45 N. W. 242; *Beebe v. Board of Supervisors*, 64 Hun. 377, 19 N. Y. Supp. 629 (New York Supreme

[Mayor and Aldermen of the City of Ensley v. Hollingsworth & Co.]

Court is not a court of last resort) ; *Smith v. City of Albany*, 61.N. Y. 444—are all based on the provisions of a special statute.

The case of *Wardell v. R. R. Co.*, 103 U. S. 651, 26 L. Ed. 509, was one in which the directors of a railroad company entered into a fraudulent scheme by forming an auxiliary company to make the contract with themselves, whereby they were to become stockholders in the auxiliary company, and share in the profits of the contract.

The Supreme Court of South Carolina held valid a contract between the intendent and the town council of which he was a member, stating that there is nothing in the law to forbid such a contract.—*Albright & Pinchback v. Town Council*, 9 Rich. Law (S. C.) 399.

A contract for professional services, made by the common council with the mayor, who was a member of the council, was held valid, "there being no fraud." —*Mayor, etc., of Niles v. Muzzy*, 33 Mich. 61, 20 Am. Rep. 670.

A deed by the city council of Boston to a member of the council, who was also a member of the committee to which was referred the matter, it not appearing that "he took any part in the transaction officially, or that, as agent of the city, he conveyed to himself," was upheld.—*Tucker v. Howard*, 122 Mas. 529, 533.

Although a stockholder and secretary of a water company was also a member of the borough council, and was by statute disqualified from voting, and guilty of a misdemeanor in doing so, yet he voted on the ordinance and municipal contract with himself. Held that, as there was a majority without his vote, the contract was valid.—*Marshall v. Ellwood City Boro*, 189 Pa. 348, 41 Atl. 994.

[Mutual Life Industrial Association of Georgia v. Scott.]

Whatever may be the considerations which might address themselves to the legislators in framing.a proper law on the subject, we cannot, under the authorities, hold this contract invalid.

Section 1193 of the Code of 1907 is not involved in this case, the contract having been made before said section became the law.

ANDERSON, McCLELLAN, and MAYFIELD, JJ., concur.