THE STATE, ROBERT STROUD, PROSECUTOR, v. THE CON—SUMERS' WATER COMPANY AND THE ATLANTIC CITY WATER WORKS COMPANY.

1. When a statute directs that notice of an election shall be given for at least six days, the method of computation is to include either the day when the notice was given or the day of the election and to exclude- the other day.

2. The amount of debt which a city can incur in the purchase of water works under the acts (*Rev.*, *p.* 723, § 43; *Rev. Sup.*, *p.* 669, § 783) is-not restricted by a limitation of indebtedness contained in the city charter.

3. A city, under these acts, can purchase the water works of more than one company.

4. An ordinance providing for the purchase by a city of the property of a water company, stock in which company was held by four members of the common council who voted for the ordinance, is illegal because opposed to the policy and intent of section 44 of the Crimes act. *Rev. Sup.*, p. 200.

5. It would seem that such ordinance is also voidable at common law because its passage was for the purchase of property in which the agents of the city were interested.

6. A resident of the city who pays a poll tax only can prosecute a writ of *certiorari* to test the legality of such ordinance.

---

A writ of *certiorari* bringing up an ordinance passed by the common council of Atlantic City, touching the purchase by the said city of the property of the Atlantic City Water Works Company; also a similar ordinance for the purchase of the property of the Consumers' Water Company.

Argued at November Term, 1893, before Justices DEPUE, VAN SYCKEL and REED.

For the prosecutor, *John J. Crandall.*

For Atlantic City, *Allen B. Endicott.*

For the Consumers' Water Company, *William E. Potter.*

For the Atlantic City Water Company, *Joseph Thompson.*

The opinion of the court was delivered by

REED, J. On June 30th, 1892, a special election was held in Atlantic City in respect to the acceptance of the provisions of "An act to enable cities to supply the inhabitants thereof with pure and wholesome water" and the supplements thereto. *Rev.*, p. 720; *Rev. Sup.*, p. 689, *et seq.*

The provisions of the act were assented to by a majority of the legal electors voting at said election.

There were at this time two water companies engaged in supplying water to the inhabitants of the city.

Under color of the provisions of the act mentioned and its

supplements, the common council of Atlantic City, on October 17th, 1892, passed an ordinance providing for the purchase of the property and franchise of the Consumers' Water Company for the sum of $200,000, payable in bonds of the city, and on December 19th, 1892, passed a similar ordinance for the purchase of the property and franchise of the Atlantic City Water Works Company for the sum of $500,000, payable in bonds of the city.

The terms of purchase contained in the respective ordinances were accepted by each of the respective companies.

The ordinances mentioned are now attacked. The legality of these ordinances is challenged upon several grounds.

The first of these in logical order is the one which denies that the statute under the provisions of which the municipal action was taken was ever legally accepted by Atlantic City. The point made under this head is that the statutory notice of the special election held to obtain the sentiment of a majority of the legal electors of Atlantic City was not given; that the notice which was given was only a five days' instead of a six days' notice.

The statute (*Rev.*, *p.* 725, § 52) requires notices of the special election to be set up and published at least six days previous to the day of election. The notices were given June 24th and the election was held June 30th.

By excluding one and including the other of these days in the computation, it appears that six days' notice was given.

This method of computation is the mode adopted in this state unless the requirement is that the days shall be entire days. *Den* v. *Fen*, 3 *Halst.* 303; *State, Ackerson,* v. *North Bergen,* 10 *Vroom* 694, 695; *McCulloch* v. *Hopper,* 18 *Id.* 189.

Nor do the words "at least six days" imply more than that six days' notice shall be given. The Justices' Court act requires that all summons shall be served at least five days before the time of appearance. Under this act the true mode is to exclude either the day of service or of appearance and to include the other. *Day* v. *Hall,* 7 *Halst.* 203.

Whatever differences of view in respect to the force which should be given to the words "at least" may exist elsewhere, it is settled here that they do not change the requirement of a certain number of days' notice into a requirement that the days shall be entire.

The notice was sufficient.

The next objection is that the amount of the indebtedness which will be imposed on the city by these purchases is in excess of the amount to which the city indebtedness is limited by the city charter.

The charter limitation is $35,000.

The proposed cost of the two works is $700,000. If these purchases are within the restraining clause of the charter, the ordinances are *ultra vires*.

But an inspection of the statutes authorizing the purchase of water works will display an intention that the only limitation to be put upon the amount of the cost and expense of carrying out the power conferred is the limitation contained in the act itself. By the original act (*Rev., p.* 723, § 43) the amount of debt which could be incurred was $80,000, and by the supplement (*Rev. Sup., p.* 669, § 783) this amount was changed to $1,000,000.

The express power to issue bonds up to this amount, the provision for the application of the water rents to the payment of this debt, and, indeed, the whole scope of the statutory scheme, displays a clear intent that the amount of this municipal indebtedness springing out of these purchases is controlled entirely by the terms of this statute.

The next objection is that the statute did not empower the common council to buy two water plants.

We think that the statute clearly confers this power.

The purpose of the act is to enable cities, if they wish to do so, to take into their own hands the supply of water.

It may be supplied already by private or corporate enterprise, but this act enables the municipality itself to supply the water. The power to accomplish that purpose is plenary.

The city can buy or condemn land and sources of water-supply and build its own works and lay its own pipes.

It can buy a fully-equipped plant.

It can buy such plant and additional land and a water-supply.

It can buy two or more plants and additional land and water sources.

It can do all this under the power granted so long as the exercise of the power, in view of present and future municipal needs, is not so grossly abused as to call for the supervisory interposition of this court.

The next objection is that the ordinances are illegal, because four of the members of the common council who voted for them were stockholders in the Consumers' Water Company.

The point made is that the common council was the agent of Atlantic City in making these purchases, and that four of its members were adversely interested as part owners of the property of the Consumers' Water Company; that the contract is voidable at the instance of the city or a taxpayer of the city.

It is a fundamental rule applicable to both sales and purchases, that an agent employed to sell cannot make himself the purchaser, nor, if employed to purchase, can he be himself the seller. The expediency and justice of this rule are too obvious to require explanation. *Dun. Agency (Paley)*, p. 33.

Indeed, this doctrine is so entirely settled that citation of authorities would be wasted.

Nor is this doctrine confined to transactions of private agents.

It is applicable whenever the fiduciary relation arising out of the contract or condition of agency exists.

The rule is enforced whether the agency is public, *quasi*-public or private.

"It is well settled," says Mr. Beach, "that directors or managers of corporations and other companies are equally within the rule which guards and restrains the dealings and

transactions between trustee and *cestui que trust*, and agent and his principal; directors and managers being, in fact, trustees and agents of the bodies represented by them."
1 *Beach Corp.*, § 240.

Again, in section 242, he says: "Directors are disqualified from acting in the right and behalf of themselves and of their companies at the same time; and transactions with themselves or wherein they are interested, are voidable, either by the company or by its stockholders, or by its creditors."

A director of a corporation cannot make for himself or for his own benefit a contract which will bind the company. The contract may be repudiated by the company at the instance of a stockholder. *Guild, Executor,* v. *Parker, Receiver,* 14 *Vroom* 430.

The limitation upon this doctrine as well as its applicability to corporations and their directors, is illustrated in the case of *Stewart* v. *The Lehigh Valley Railroad Co.,* 9 *Vroom* 505, decided in the Court of Errors.

The Morris Canal and Banking Company had entered into a contract with Stewart to lease to him a number of canal boats, and to allow to him, and to refuse to others, a special drawback from the amount of tolls which were payable according to the printed rates of tolls. Stewart was, at the time of the execution of the contract, one of the directors of the canal and banking company.

The doctrine announced was that this contract was voidable at the option of the company, exercised within a reasonable time.

Mr. Justice Dixon, speaking for the court, said: "The vice which inheres in the judgment of a judge in his own cause, contaminates the contract; the mind of the director or trustee is the forum in which he and his *cestui que trust* are urging their rival claims, and when his opposing litigant appeals from the judgment there pronounced, that judgment must fall. It matters not that the contract seems a fair one. Fraud is too cunning and evasive for courts to establish a rule that invites its presence."

Again, the learned justice remarks:

"The application of the rule is most frequent in the rela-tions between vendor and purchaser, but its reason and force extend to all agents and trustees, public and private. It has not always presented itself to the minds of judges in its full scope. At times they have been seduced into listening to sug-gestions that the circumstances of the special case showed the absence of fraud and overreaching. At other times they have intimated that the *cestui que trust* must seek his relief in equity; but the strongest intellects have enunciated the rule with its utmost vigor and in its broadest extent."

As already observed, this doctrine applies not only to private agents, to agents of corporations *quasi*-public, but to public agents as well. *Mech. Pub. Off.*, § 840.

One of the trustees of a school district can enter into no contract to furnish labor or materials to build a school-house which will bind the district. *Pickett* v. *School District*, 25 *Wis.* 551; *Currie* v. *School District*, 35 *Minn.* 163.

Where certain freeholders were appointed to constitute a board to act for certain townships, under an act for the improvement of a harbor, a contract made with a part of said freeholders to build piers, although said part was less than a majority, was held void. *People* v. *Township Board of Overyssel*, 11 *Mich.* 222.

An employment by or under authority of the common council of a city of one of its members to render services for the city, is against public policy, and no action can be maintained against the city to recover for services rendered. *Smith* v. *City of Albany*, 61 *N. Y.* 444. There was a statute making it unlawful for a member of any common council of any city in the state to become a contractor under any contract authorized by the common council, and authorizing such contracts to be declared void at the instance of the city.

It was held that this statute was only declaratory of the common law as it existed previous to its passage.

From the general prevalence of this doctrine in all classes

of agencies, and the strictness with which it has been held in this state, it would seem that, aside from any statutory con-- demnation, the contract created by the ordinance and its acceptance is voidable. The suggestion that the passage of the ordinance was a legislative act only cannot be entertained.

It was a *quasi*-judicial act. The common council, in making this purchase, were agents of the city, bound to exercise their judgment for the interests of the inhabitants of the city, uninfluenced by. any adverse interest.

It is not essential, however, that the voidability of this contract should be rested upon the common law rule already discussed.

It appears that contracts of this class have received the condemnation of the legislature.

This appears by the forty-fourth section of the Crimes act, in *Rev. Sup., p.* 200.

This section provides that if any member of any  *  *  * board of common councilmen of any city  *  *  * shall be directly or indirectly interested in furnishing any goods, chattels, supplies or property of any kind whatsoever to or for the  *  *  * city, the contract or agreement for which is made, or the expense or consideration of which is paid by the  *  *  * council of which such member is a part, shall be deemed guilty of a misdemeanor.

While the section contains much beside, it contains, clearly, the provision above set forth.

This language, with equal clearness, includes the contract now in question. Four of the members of the common council of Atlantic City were interested in furnishing the property of the Consumers' Water Company to the city, the expense or consideration of which is paid by the council of which these four members are a part.

The invalidity of the contract therefore rests upon the doc- trine that a contract is illegal if it be opposed to the general policy and intent of a statute. *Melliss* v. *Shirley Local Board, L. R.,* 16 *Q. B. Div.* 446 ; *Milford Borough* v. *Milford Water*

Co., 124 Pa. St. 610 ; State, Gregory, Taylor et al., v. Jersey City, 5 Vroom 390.

I regard this case as directly ruled by the case last cited.

The statute under which that decision was made is similar to the one already mentioned. Two of the members of the common council of Jersey City, in that case, were interested in the property purchased ; in this case, four. The conditions existing in that case exist in this.

I may remark that the invalidity of such a contract in no way rests upon a criminal intent in those members who voted for it. I suppose none of the four had in mind the existence of this statute. The rule is one of policy, which, without regard to intention, inexorably reaches all contracts which contravene the purposes of the law.

Having reached the conclusion that the ordinance for the purchase of the property of the Consumers' Water Company is invalid, the question remains whether this result affects the later ordinance for the purchase of the property of the Atlantic City Water Works Company. I think it does.

My reading of the testimony has left the impression that it is not probable that the second ordinance would have been passed had it not been that the other ordinance had been passed and accepted. There seems to have been a purpose to get both works, and I think each company was willing that common council should purchase the works of the other company if it purchased its own plant.

The water committee of common council met the representatives of both companies together, called in the minutes of council the "water combine," in regard to contracts for furnishing water. On the night when this committee reported, the first ordinance was introduced. After the passage of this ordinance there was the purpose of purchasing the other plant, because the first contract had been made. The members who voted for the first, because they had so voted, were inclined to vote for the second ordinance, not only to subserve the purpose of controlling both plants, but to avoid

.incurring a suspicion of partiality toward the owners of the first-mentioned plant.

The two ordinances seem to be so entangled in the transaction that I think the illegality of the first purchase affects the second purchase.

The remaining question is whether the prosecutor of this writ has such an interest as will support his position.

He is a resident of Atlantic City and pays a poll, but no property tax in the city. He, however, as a resident in the city, pays all the tax which the law imposes upon him.

The resident who is liable to a property tax in Atlantic City to-day may have no property taxable there the next month or the next year, and he who is now without may soon possess it. He may earn it or non-taxable property may be transmuted into taxable shape.

It would be a narrow distinction to draw, to hold that a citizen who pays a trivial property tax is a competent prosecutor, and that one who may soon be liable to pay a much greater tax is incompetent to test the legality of a transaction which will result in imposing a burden of debt upon his municipality for a generation.

The city itself is represented by those who passed this ordinance, and therefore the only persons who will and can take measures to test its legality are residents, and the use of the writ for such a purpose should be liberally granted.

The ordinances are set aside.