## Staunton.

### NORTON GROCERY COMPANY, A CORPORATION, v. PEOPLES NATIONAL BANK OF ABINGDON.

September 20, 1928.

The opinion states the case.

*O. M. Vicars* and *E. M. Fulton*, for the plaintiff in error.

*White, Penn & Stuart*, for the defendant in error.

HOLT, J., delivered the opinion of the court.

Jones and Combs were road builders working in Wise county and had fallen on evil days. Both money and credit had been exhausted. Mr. Henry Roberts was appointed trustee to act for them in the further execution of their contract, and he also had come to the end of his resources.

Creditors, among whom were the plaintiff and the defendant, stood an excellent chance of losing all that was due them. In this emergency, and in the hope

that something might be saved from the wreck if the contract should be completed, this agreement was entered into:

"This agreement made this the 5th day of November, 1924, by and between Norton Hardware Company, Incorporated, Norton Grocery Company, Incorporated, and Thomas Andrews & Company, Incorporated, parties of the first part, and the Peoples National Bank of Abingdon, Virginia, party of the second part.

"Witnesseth: That whereas, Jones & Combs and Henry Roberts, trustee, are indebted to the parties of the first part on account of supplies and materials furnished them in the construction and improvement of certain roads under contracts between the State of Virginia and Jones & Combs, and

"Whereas, Henry Roberts, trustee, who is acting for Jones & Combs in the construction of said work is unable to further prosecute the work on account of having no money with which to pay for same, and

"Whereas, the party of the second part is willing to advance to Henry Roberts, trustee, money with which to continue work under said contracts for Jones & Combs.

"Now, therefore, in consideration of the premises the said parties of the first part have agreed to direct Henry Roberts, trustee, to withhold such sums of money as may come into his hands to which they are entitled as collateral security, to secure the party of the second part for any money which it may hereafter advance to the said Henry Roberts, trustee, with which to complete said contracts for Jones & Combs, and any money which the said party of the second part has heretofore advanced to the said Henry Roberts, trustee, which has been used by him in the construction and improvement of said roads, provided the said

party of the second part shall advance sufficient money to the said Henry Roberts, trustee, with which to complete said contracts. But if the said party of the second part does not furnish to the said Henry Roberts sufficient money with which to complete said contracts, then no part of the money which may come into the hands of the said Henry Roberts, trustee, to which the said parties of the first part may be entitled shall be applied to the payment of any indebtedness owing to the said party of the second part by the said Henry Roberts, trustee, for money advanced by said party of the second part to the said Henry Roberts, trustee, as aforesaid, and this contract shall thereupon become null and void, without any liability on the part of the second party to the said parties of the first part on account of its failure to advance to the said Henry Roberts, trustee, sufficient money with which to complete said contracts.

"For the consideration aforesaid the said party of the second part hereby guarantees the payment to the said parties of the first part for any and all goods or merchandise furnished the said Henry Roberts, trustee, from the date hereof until the said parties of the first part are notified by the said party of the second part not to furnish the said Roberts any further or other goods or merchandise, and should said notification be by telephone conversation or telegraph communication, the same shall be immediately confirmed by writing, mailed to the said parties of the first part. The money to which the said parties of the first part may be entitled as aforesaid which the said Henry Roberts, trustee, is hereby directed to withhold as collateral security as aforesaid, shall not be used for the purposes stated in this agreement until said contracts are completed and the amount thereof which it is necessary to use by the

said Henry Roberts with which to pay the said party of the second part is ascertained.

"Witness the following signatures on this the day and date first above written.

> "NORTON HARDWARE CO.,
> "By R. T. Flanary, Pres.
> "NORTON GROCERY CO.,
> "By G. E. Heuser, Sec'y & Treas.
> "THOMAS ANDREWS & CO.,
> "By A. F. Snodgrass,
> "Sec'y & Treas.
> "THE PEOPLES NAT'L BANK,
> "Abingdon, Virginia
> "J. E. Legard, Pres.
> "Norton, Va., 3-2-1926."

Under this contract the plaintiff furnished wares and merchandise to the value of $14,464.24, and was paid by the defendant on account $10,697.25. It is to recover the balance of $3,766.99 that this motion is brought. It is a simple one and is based squarely upon the contract. To it the defendant demurred and assigned as reasons therefor the following grounds:

"First: The plaintiff in said notice of motion bases its right to recover upon a certain alleged contract dated November 4, 1924, made and entered into between it and defendant, a copy of said alleged contract being filed with the notice as a part thereof. Said contract shows upon its face and is so alleged in the notice of motion to be a contract of guaranty, yet said notice of motion does not allege that due diligence has been used by the plaintiff to collect from the principal debtor, said principal debtor, as shown by said contract, being a firm of road contractors, and the debts guaranteed by said contract being debts owing from said road contractors to the plaintiff. Further-

more said notice does not allege that the collection of said debts, or a part thereof, cannot be made from said principal debtors. Furthermore said notice does not allege that defendant has ever been notified that the plaintiff has used due diligence to collect said debts from said principal debtors and is unable to make such collection. Hence, since the defendant is only a guarantor of the payment of said debts, the plaintiff cannot now maintain this action against the defendant.

"Second: It is *ultra vires* a national bank to make such a contract as is alleged and set forth in said notice of motion, and hence the defendant is not bound by said alleged contract."

Upon the filing of this demurrer, plaintiff amended its notice in these particulars: It charged that the contract sued on was entered into for the sole benefit of the bank, and, second, that the principal debtors were insolvent.

The demurrer was sustained, but it is conceded that the amendment met some of the omissions charged against the original motion; therefore, the second ground of demurrer is now alone relied upon.

It is said that the contract is one of guaranty, such as is not permitted under the laws governing national banks, and is *ultra vires*.

The particular statute in point and relied upon appears in U. S. Code, Title 12, section 24, paragraph seventh, and is:

"Seventh. To exercise by its board of directors, or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin and bullion; by

loaning money on personal security; and by obtaining, issuing and circulating notes according to the provisions of this chapter."

This is the status of *ultra vires* contracts, as stated by Mr. Justice Gray, in *Central Transportation Co.* v. *Pullman's Palace Car Co.*, 139 U. S. 24, 35 L. Ed. 55, 11 Sup. Ct. 478: "The view which this court has taken of the question presented by this branch of the case and the only view which appears to us consistent with legal principles, is as follows: A contract of a corporation which is *ultra vires*, in the proper sense, that is to say, outside the object of its creation as defined in the law of its organization, and therefore beyond the powers conferred upon it by the legislature, is not voidable only but wholly void, and of no legal effect. The objection to the contract is not merely that the corporation ought not to have made it, but that it could not make it. The contract cannot be ratified by either party, because it could not have been authorized by either. No performance on either side can give the unlawful contract any validity, or be the foundation of any right of action upon it. When a corporation is acting within the general scope of the powers conferred upon it by the legislature, the corporation as well as persons contracting with it may be estopped to deny that it has complied with the legal formalities, which are prerequisites to its existence or to its action, because such requisites might in fact have been complied with. But when the contract is beyond the powers conferred upon it by existing laws, neither the corporation, nor the other party to the contract, can be estopped, by assenting to it, or by acting upon it, to show that it was prohibited by those laws."

This court, speaking through Judge Chichester, in *Richmond F. & P. R. Co.* v. *Richmond, etc., Connec-*

*tion Co.*, 145 Va. 266, 133 S. E. 888, said: "When the contract is once declared *ultra vires*, the fact that it is executed does not validate it, nor can it be ratified so as to make it the basis of suit or action, nor does the doctrine of estoppel apply."

So much for *ultra vires* contracts.

■ Since this action is upon a contract, and since there is no attempt to recover on a *quantum meruit*, it only remains for us to ascertain if the contract was in fact *ultra vires*. If it was, there can be no recovery. If it was authorized as something incidental to the business of a national bank, then the demurrer should not have been sustained, and this case must be heard upon its merits.

■ In *First National Bank of Tallapoosa* v. *Monroe*, 135 Ga. 614, 69 S. E. 1123, 32 L. R. A. (N. S.) 550, the court, after citing the statute heretofore quoted, said: "The provisions referred to do not give power to a national bank to guarantee the payment of the obligations of others solely for their benefit, nor is such power incidental to the transaction of the business of banking. A bank can lend its money, but not its credit."

In *Howard & Foster Co.* v. *Citizens' Nat. Bank of Union*, 133 S. C. 202, 130 S. E. 758, it was said: "It has been settled beyond controversy that a national bank, under the federal law, being limited in its powers and capacity, cannot lend its credit by guaranteeing the debt of another. All such contracts entered into by its officers, are *ultra vires*, and not binding upon the corporation. 7 C. J. 814; Ann. Cas. 1916D, 557; *Merchants' Bank* v. *Baird*, 160 F. 642, 90 C. C. A. 338, 17 L. R. A. (N. S.) 526."

This proposition of law is stated in unnumbered cases, and it is not necessary to buttress it by elaborate citations. So far as we are advised it is not questioned,

and it is certain that the plaintiff does not question it here. Banks are not eleemosynary institutions. They may lend their money but not their credit.

■■ It is frequently said that a guaranty for the sole benefit of another is void. *Farmers' & Merchants' Bank of Reedsville* v. *Kingwood Natl. Bank*, 85 W. Va. 371, 101 S. E. 734; *Fidelity & Deposit Co.* v. *Natl. Bank of Commerce*, 48 Tex. Civ. App. 301, 106 S. W. 782; Michie, Banks & Banking, section 250. But this does not mean that the guaranty is good because the bank receives some collateral benefit from it. In *Appleton* v. *Citizens' Cent. Natl. Bank*, 190 N. Y. 417, 83 N. E. 470, 32 L. R. A. (N. S.) 543, there was a guaranty for a loan of $12,0 0.00. It was agreed that out of the proceeds thereof $10,000.00 should be paid upon a debt due to the bank. This did not make the guaranty good. It was in the nature of a collateral undertaking and certainly as to the excess of $2,000.00, the guaranty was for the sole benefit of another. We however know of no Federal case in which it is held that a guaranty for the sole benefit of the guarantor bank is void.

Even a casual reading of the contract in evidence shows that the bank had no purpose except to protect itself, and this the amended motion states in terms.

It would not be possible within any reasonable limits to undertake a detailed consideration of those cases cited and relied upon by the defendant; but it may be said with confidence that in all of them the bank undertakes to lend its credit to another, as the *Appleton Case* well illustrates.

The case nearest in point is *Howard & Foster Co.* v. *Citizens Natl. Bank*, *supra*. The bank had been financing a clothing company, and in consequence thereof the clothing company was largely indebted to it. This company's credit was impaired, and the bank,

in order to secure further credit for it guaranteed the payment of all future bills of merchandise to be shipped to it by Howard & Foster Company and others. The purpose of this was to enable the clothing company to continue business, and ultimately to pay its debt to the bank. This the court said could not be done. Here the purpose of the guaranty was to keep the clothing company in business as a going concern in the hope that the bank might be ultimately paid. This benefit to the bank, as in the *Appleton Case*, was collateral to the guaranty itself. It is to be observed that the clothing company might have used the proceeds from sales to pay the bank and it might not. The conduct of its affairs was in no wise immediately under the bank's control, and there was here clearly a loan of credit for the benefit of another.

The purpose back of this rule is fundamentally sound. Banks should not be permitted to engage in undertakings out of their line of business, and thus to put stockholders and depositors to unanticipated hazards. Such are not incidents of banking business.

This issue has twice been before the United States Supreme Court, and twice that court has found it unnecessary to decide that particular question. The *Appleton Case* appears as *Citizens Natl. Bank of New York* v. *Appleton*, 216 U. S. 196, 30 S. Ct. 364, 34 L. Ed. 443. There the judgment appealed from was only for the amount the bank had actually received. The court held that it should be sustained whether the guaranty was good or not, upon the idea that the bank could not be heard to say that the contract was *ultra vires* and at the same time retain the benefits thereof, and this was also held in *First Natl. Bank of Aiken* v. *Mott Iron Works*, 258 U. S. 240, 42 S. Ct. 286, 66 L. Ed. 593. That is to say, there has been no decision

by the court of last resort. However, the question is a Federal one, and so we should follow the judgment of the Federal courts so far as they have spoken.

The situation was somewhat unusual. In the prosecution of legitimate banking business, it had made loans to a company that was threatened with utter insolvency, and these loans bid fair to become a total loss. It seemed to the bank that something might be saved if the work could be completed, and its guaranty was made with that single purpose in view. It was being carried on by a trustee, who we may assume represented every interest. Here was no effort, as in the *Howard & Foster Case,* to keep a failing concern upon its feet. These contractors had already gone to the wall, and what was done was done, not to lend credit to them, but to enable the trustee, who represented every interest, to gather up for creditors all available fragments. The bank had in good faith stumbled into what was almost a hopeless situation, and one of the incidental powers of banks is the power of self-preservation.

Formerly a national bank could not make a loan on real estate, but it could as additional security to a loan already made take a mortgage thereon. Could it not, for its own protection, say to an insurance company: "Insure this property, and in the event that you are unable to collect the premium from the owner, I will pay it. I guarantee the payment." No one would question such a transaction. A bank may erect its own building, and since at times it seems advisable to do so, it may upon its lot put a structure far beyond its own needs, although it could not as an independent proposition go into the business of building and renting offices. It is possible in such a situation that a contractor might find himself financially involved and unable to go forward. Can it

be that the bank in such circumstances could not say to material men: "Furnish this contractor with those things necessary for the completion of our building, and if he does not pay we will?" In such a case the bank would not be lending its credit but would be using it for the sole benefit of the bank itself, and this is, of necessity, at times to be permitted.

The case of *Second Natl. Bank of Parkersburg, W. Va.* v. *U. S. Fidelity & Guaranty Co.* (C. C. A.), 266 Fed. 490, is very much in point. It there appears that the Evans- ville Contract Company had undertaken to build for the government certain locks and dams, and that the Guaranty Company had gone upon its bond to secure the faithful execution of this undertaking. It was agreed that if the contractor should be unable to complete the work, the surety might be subrogated to its rights, and might itself carry out the contract undertaken. The contractor was adjudged a bankrupt. There was due to it from the government $11,000.00, and it had on hand material worth about $20,000.00. There was due for labor and material $40,000.00, for which the surety was secondarily liable, and it owed about $200,000.00 of unsecured debts, $115,000.00 of which was due to the appellant and five other national banks. The court said that it was clear that these general creditors stood to lose practically all of their claims, unless they could get something out of the con- tract itself. As is usual in such cases, the officers of the bankrupt concern were sure that a large profit would be realized if the work was carried to completion. To enable the trustees to do this, the creditors were willing to make advancements, but before anything could be done, it was necessary to come to terms with the surety company, which had the right to take over and do this work itself. It said to the creditors that

it would carry out the contract or would turn over the whole matter to the trustees, but that in the latter event it should be absolutely protected against all liabilities that it had theretofore incurred, or might thereafter incur. These creditors elected to carry on the work through the trustee, and executed a bond to save the surety company harmless—to guarantee the surety company against loss. Now it is manifestly clear that a bank cannot ordinarily guarantee a surety company against a loss which it might suffer by being on some contractor's bond, but that situation, in theory sound, had to give way to the exigencies of a case in which the bank had to make a guaranty or lose a large loan already made. As is often the case, the high expectations with which the task was begun were not realized. The surety company was called upon to pay, and the banks were called upon to reimburse it by reason of their guaranty. This the banks resisted on the ground that their guaranty was illegal and *ultra vires*.

In the course of its discussion of this subject, the court said: "The limitations contained in the foregoing section were intended to insure the safe management of the affairs of a national bank, so as to protect the owners thereof in the safe conduct of its affairs, and as a guaranty that the management of such bank should at all times be free from speculation, the assumption of undue risks, or the doing of anything else calculated to injure the public by impairing the credit of the bank. It also confers upon the directors 'all such incidental powers as shall be necessary to carry on the business of banking.' In referring to this phase of the question, the Supreme Court of the United States, in the case of *First Nat. Bank* v. *Natl. Exchange Bank*,

92 U. S. 122, 23 L. Ed. 579, affirming 39 Md. 600, said: " ' * * * Authority is thus given to transact such a banking business as is specified, and all incidental powers necessary to carry it on are granted. These powers are such as are required to meet all the legitimate demands of the authorized business, and to enable a bank to conduct its affairs, within the general scope of its charter. * * * This necessarily implies the right of a bank to incur liabilities in the * * * course of its business as well as to become a creditor of others. * * * Obligations may be assumed that result unfortunately. * * * Compromises to avoid or reduce losses are oftentimes the necessary results. * * * These compromises come within the general scope of the powers committed to the * * * directors and officers, * * * and are submitted to their judgment and discretion, except to the extent that they are restrained by the charter. * * * Banks may do, in this behalf, whatever natural persons could do under like circumstances.'

"This rule is also announced in *Bank* v. *Vermont*, 231 U. S. 120, 140, 34 Sup. Ct. 31, 58 L. Ed. 147.

"It is highly important that the directors of a bank should be vested with the power for the protection of assets and the saving of debts. In 7 Corpus Juris, page 831, it is stated:

" 'The power to adopt reasonable and necessary methods for the collection and the security of debts is necessarily incident to the powers expressly granted to national banks. * * *.'

"In *Morris* v. *Third Nat. Bank of Springfield, Mass.*, 142 Fed. 25, 73 C. C. A. 211, the Circuit Court of Appeals for the Eighth Circuit said:

" 'It may be conceded that a national bank may not lawfully engage in the business of a trust company or of acting as the representative of others in matters in

which it otherwise has no corporate concern, but it does not follow that where its own interests, which have been acquired in the usual course of its business are involved and have become the subject of controversy or litigation, it is not authorized to combine them with like interests of other persons and to contract to represent the whole. *Wylie* v. *Northampton Bank*, 119 U. S. 361, 7 Sup. Ct. 268, 30 L. Ed. 455. A national bank may lawfully do many things in securing and collecting its loans, in the enforcement of its rights and the conservation of its property previously acquired, which it is not authorized to engage in as a primary business.' "

There was an appeal in this case to the supreme court, which was dismissed as per stipulation.

Looking at the substance of things, this was not a loan of credit for the benefit of another, but a use by the bank of its own credit through a trustee for the benefit of itself, and the fact that others also were benefited did not change the situation. This is substantially the situation of the case in judgment.

In *Bailey* v. *Babcock* (D. C.), 241 Fed. 501, 511, the court said: "As to the *ultra vires* character of the transaction: It is, of course, true that a national bank has no power to carry on a manufacturing, mining, or trading business, or to engage in a speculative enterprise, because the statutes of the United States are the measure of their powers, and they cannot rightfully exercise any powers except those expressly granted or which are incidental to carrying on the business for which they were established. *Logan* v. *Townsend*, 139 U. S. 67, 11 Sup. Ct. 496, 35 L. Ed. 107; *California Bank* v. *Kennedy*, 167 U. S. 362, 17 Sup. Ct. 831, 42 L. Ed. 198.

"Generally speaking, therefore, for the bank to attempt to carry on the business of manufacturing and

selling lumber, either by itself or through an agent, would be an act clearly and plainly *ultra vires*. Having no authority to engage in such business directly, a bank has no authority to engage in such business by the taking of stock. *First National Bank* v. *Converse*, 200 U. S. 425, 26 Sup. Ct. 306, 50 L. Ed. 537.

"While the foregoing propositions are perfectly plain, there is a border line not well defined, a twilight zone, between those cases where a bank acquires a property and conducts a business as an independent speculation, and those cases where the directors solely for the purpose of enabling the bank ultimately to secure a debt owing to it in some form, advances the money to further the enterprise."

The underlying principle in the cases relied upon is this: A bank may not lend its credit to another, even though such a transaction turns out to have been of benefit to the bank, and in support of this a list of cases might be cited which would look like a catalogue of ships, but there is no reason in principle why a bank may not pledge its credit for its sole benefit in an effort to save itself from loss imminent under some lawful contract, and the fact that it may redound incidentally to the benefit of another does not invalidate the transaction and this notwithstanding the fact that the transaction is termed one of guaranty. *Ellis* v. *Citizens' Nat. Bank*, 25 N. M. 319, 183 Pac. 34, 6 A. L. R. 166. There is no black magic in a name.

When we look at the substance of things, the contract in judgment is not a contract of guaranty, as that term is used in the cases relied on, but is in fact only a contract for advancements.

For reasons indicated, the judgment of the trial court sustaining the demurrer to the amended motion will be reversed, and the case is remanded to be heard upon its merits.

*Reversed and remanded.*