# Staunton.

## CITY OF BRISTOL v. DOMINION NATIONAL BANK, TRUSTEE, ET ALS.

September 19, 1929.

Absent, West, J.

72

The opinion states the case.

*J. S. Ashworth*, for the plaintiff in error.

*W. H. Robertson*, for the defendant in error.

HOLT, J., delivered the opinion of the court.

During the year 1924 certain gentlemen purchased a tract of ninetynine acres of land, situate within the corporate limits of the city of Bristol and described in the record as Highland Park Addition. To make this more available for sale they wished to divide it, or a part of it, into streets, alleys and lots and to install there certain municipal conveniences, such as water-mains, etc. These owners were of the opinion that the city should bear a part of the cost of this development. Negotiations were instituted, which resulted in a contract of date June 1, 1926, contemporaneously approved by a city ordinance; "Mr. Goodwyn not voting, account being interested."

That contract *inter alia* said: "This agreement, made and entered into in duplicate, this the 1st day of June, 1926, by and between D. W. Wagner, trustee, party of the first part, and city of Bristol, a municipal corporation of the State of Virginia, party of the second part:

"Witnesseth: Whereas, the party of the first part for the owners thereof, holds the legal title to certain real estate in the city of Bristol, Virginia, north of State street and mostly between Little creek and Eighteenth street, which the owners desire to subdivide into streets and lots, and to sell principally for residence purposes and factory sites, and;

"Whereas, the party of the first part, through a

committee for the owners, has reached an agreement with the party of the second part which is believed to be fair and equitable to all concerned."

The work to be done is next designated, after which is the consideration there thus expressed:

"In consideration of the foregoing and on condition that the work be done by the party of the first part during the year 1926, as herein provided, the party of the second part agrees to exempt from all city taxes the real estate shown by the map of said sub-division as aforesaid, for a period of ten years, beginning with the year 1926, provided that," etc.

This ten-year exemption period was reduced to three years following the dates of sales to outside parties.

All work contemplated was to be completed in 1926. An itemized statement, filed with defendant's plea, shows what was done:

### "STATEMENT

| | |
|---|---|
| "Excavation | $ 4,692.44 |
| "Macadam | 15,042.19 |
| "Curbs and gutters | 6,534.05 |
| "Sewers | 6,364.17 |
| "Water mains | 6,143.59 |
| "Extras | 249.25 |
| "Engineering | 1,590.22 |
| "Total | $40,615.91" |

No taxes were paid for the years 1926, 1927 and 1928 and it was to recover them that this action was brought, the position of the plaintiff being that the contract of June 1, 1926, was *ultra vires* and void.

The defendants have filed two pleas, under which they claim that the contract is valid and amounts in substance to no more than a contract for payment of taxes in advance afterwards so paid. They further

contend that they are entitled to recover on a *quantum meruit*, even if it is in fact void, and on this counterclaim they prevailed.

There was a jury trial. The jury first returned this verdict: "The jury finds plaintiff entitled to recover taxes sued for; jury further finds defendant entitled to recover from plaintiff $20,307.95, payable in ten equal installments from taxable year 1926. Karl Harmeling, foreman."

Some discussion as to its form arose. The jury was sent back to its room and after a little while reported to the court this finding: "We, the jury, find plaintiff entitled to recover taxes sued for for the years 1926, 1927 and 1928, amounting to $3,515.40. We, the jury, further find the defendant entitled to recover from the plaintiff $20,307.95, less taxes sued on $3,515.40, $16,792.55, less interest $4,030.23, balance $12,762.32. Karl Harmeling, foreman."

In this final form it was adopted and merged into judgment.

■ If the contract be for tax exemptions it is void under the provisions of 183 of our Constitution. It is there declared that no property shall be exempted from taxation save that mentioned in said section or elsewhere in the Constitution as entitled to such a privilege, and it is not contended that this land comes within any exempted class.

If it is in fact, as defendants claim, an agreement to pay taxes in advance, it is likewise void. Section 168 of the Constitution of 1902 provides that "all property, except as hereinafter provided, shall be taxed; all taxes whether State, local or municipal shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws."

This contract if valid might have covered taxes to accrue not merely with a ten-year period but for one of twenty or thirty years. What will be the assessed value of this land ten years from 1926, or what will then be the rate of taxation, is plain guess work. The record does not show that any sum was agreed upon as the estimated cost of improvements to be made, but had such an agreement been reached the taxes thereafter to accrue must be measured by the assessed value of this property and the rate of taxation. Should values increase beyond what was guessed at, then the levy would not have been uniform measured by levies on other properties of like value and of the same class. In addition to this insurmountable constitutional objection, collection of taxes in advance for a period of years would throw the finances of a city into inextricable confusion.

In *City of Richmond* v. *Va. R. & P. Co.*, 124 Va. 529, 98 S. E. 691, 695, this court said: "The whole extent to which the holdings of those cases go on the question under consideration is this: That where a continuing service is to be rendered to a municipality for which it has power to contract, and it does make a contract for such service which is reasonable and valid in other respects, and therein, either expressly or substantially, agrees to pay each year for such service the amount of the city taxes on certain property, and the amount so agreed upon appears to be only a fair return, or but a reasonably adequate consideration for the service rendered, the courts will hold such an agreement not to be, in truth, a tax exemption, but an agreement to make compensation for such service, and that, hence, such an agreement is enforceable, either by action to recover for the service rendered at the contract price therefor, which is the annual tax, or by

set-off of the value of such service against the annual tax as it accrues, so long as such service continues under such contract. * * * * * * *

"No authority has been cited before us extending the doctrine of the cases next above discussed to the point of holding that a municipality may, for any other valuable consideration than services to it such as aforesaid, contract away its taxing power and that such contract will be held not to be a tax exemption. And on principle, it will be at once perceived that such a broad power of contract would annul all constitutional provisions against exemption of property from taxation."

■ The contract in judgment was not one for continuing service. It stipulated that the work would be completed in 1926. It was so completed and this action was not brought until 1928.

■ Section 2708 of our present Code declares that no councilman shall be interested directly or indirectly in any contract to be performed for the city which they represent and that in the event they are interested every such contract shall be void. This statutory declaration is but a re-statement of a common-law principle (*Bay* v. *Davidson*, 133 Iowa 690, 111 N. W. 25, 9 L. R. A. [N. S.], 1014, (119 Am. St. Rep. 650), although it is sometimes held that at common law such contracts are merely voidable (note to this case in 9 L. R. A. [N. S.]).

■ "The rule is one of policy, which, without regard to intention, inexorably reaches all contracts which contravene the purpose of the law." *Stroud* v. *Consumers' Water Co.*, 56 N. J. L. 422, 28 Atl. 578, 580.

"It is almost needless to say that a contract so prohibited by law is utterly void, and there is no power

that can breathe life into such a dead thing." *Milford Borough* v. *Milford Water Co.*, 124 Pa. St. 610, 17 Atl. 185, 186, 3 L. R. A. 122.

■ A contract made by a councilman acting for the city with himself, or with corporations in which he is pecuniarily interested, is against public policy and not enforceable against the municipality because of the temptation it places before such officers to profit in double dealing. *Bay* v. *Davidson, supra*; McQuillen, Municipal Corporations, Vol. 2, page 215; 44 C. J. 90; Dillon on Mun. Corp. (5th ed.), sections 772, 773.

■ Councilman Goodwyn did not vote but that does not affect the principle involved.

In *Beebe* v. *Supervisors of Sullivan County*, 64 Hun. 377, 19 N. Y. S. 629, 630 (affirmed 142 N. Y. 631, 37 N. E. 566), the court said:

"It is said in the case before us that the supervisor who was employed did not vote on the question of his own employment or upon the audit of his bill; that does not cure the evil; the influence upon his fellow members is the same; his constituents are entitled to his judgment in making contracts, to his scrutiny in passing upon accounts, and to his unbiased and disinterested efforts in both; and he cannot make the violation or neglect of the duties he owes to his constituents the means of validating an otherwise illegal act; he cannot put on and off the garb of a public official, and discharge or refuse to discharge the duties of his trust at will, and as best subserves his private interests. He is a part of the board of supervisors; its act is his act, and he cannot, as a supervisor, make a contract with himself as a private citizen." *Bay* v. *Davidson, supra; City of Ensley* v. *Hollingsworth*, 170 Ala. 396, 54 So. 95, Anno. Cas. 1912D, 652. This last case holds that this rule applies only when a statute has been violated.

This is a sound principle and every reason of public policy calls for its observation. The city was entitled to the unbiased judgment of every member of its council. We do not mean to say that Mr. Goodwyn was actually moved by motives of interest. There is nothing in the record to show that he was but that cannot change the situation.

The city charter, in section 40, declares that:

"All contracts for more than one thousand dollars shall be awarded to the lowest responsible bidder in such manner and under such bond as may be prescribed by ordinance, and after the city manager shall have made due advertisement for such time as the couucil may prescribe, by newspaper or posted notices. But the city manager shall have the power to reject all of the bids and advertise again; and all advertisements shall contain a reservation of this right."

In section 47 is this further provision:

"No contract, agreement or other obligation involving the expenditure of money shall be entered into, nor shall any ordinance, resolution or order for the expenditure of money be passed by the council or be authorized by an officer of the city unless the auditor shall first certify to the council or to the proper officer, as the case may be, that the money required for such contract, agreement, obligation or expenditure is in the treasury or safely assured to be forthcoming and available in time to comply with or meet such contract, agreement, obligation or expenditure; and no contract, agreement, or other obligation involving the expenditure of money payable from the proceeds of bonds of the city shall be entered into until the issuance and sale of such bonds have been duly authorized in accordance with the provisions of this charter in reference to city bonds."

■ The contract in judgment violates the common law. It violates the provisions of the city charter. It violates the State's statute and a constitutional provision, from which it follows that it is *ultra vires* and void.

This the trial court recognized, certainly to the extent of holding that it could not be enforced. It gave the plaintiff judgment for unpaid taxes for the years 1926, 1927 and 1928, and this it could not have done on the theory that the contract was a binding obligation. Assuming this to be true and that the defendants were entitled to recover at all on a *quantum meruit* they were entitled to a flat judgment, but their recovery was spread over a ten-year period and its cash value ascertained as of the date of entry; that is to say, this part of the judgment followed the contract.

■ "When the contract is once declared *ultra vires*, the fact that it is executed does uot validate it, nor can it be ratified so as to make it the basis of suit or action, nor does the doctrine of estoppel apply." *Richmond F. & P. R. Co.* v. *Richmond, etc., Connection Co.*, 145 Va. 266, 133 S. E. 888, 898. *Norton Grocery Co.* v. *Bank*, 151 Va. 195, 144 S. E. 501; *Central Transportation Co.* v. *Pullman's Palace Car Co.*, 139 U. S. 24, 11 Sup. Ct. 478, 35 L. Ed. 55.

As a contract it is waste paper and as a contract worthless.

■ But it by no means follows that a claimant is always without remedy. There may be a recovery on an implied assumpsit for benefits conferred and kept.

■ "It should be borne in mind that there is a distinction between contracts void as violative of a statute or because offensive to public policy, and contracts which are void because in excess of corporate power—*ultra vires*—in respect to a recovery on the

*quantum meruit.* This distinction is well recognized in adjudicated cases. In the latter class, where the corporation has received benefits which have been applied to authorized objects under an *ultra vires* contract, although no action can be had upon the contract, a recovery may be had on the *quantum meruit.*" *City of Ensley* v. *J. E. Hollingsworth & Co.*, 170 Ala. 396, 54 So. 95, 97, 100, Ann. Cas. 1912D, 652.

In that case it was said that the plaintiff could not "maintain an action upon the *quantum meruit* for work done, or upon the *quantum valebat* for materials furnished. The transaction itself out of which the contract springs falls under the ban of the law. It comes within the class, and upon like principles, of contracts that are expressly prohibited by statute. The illegality affects the entire transaction, and out of it no cause of action can arise."

Judge Taft has thus adequately defined the right and its limitation: "Where the conferring of benefits was induced by an express agreement which is void the law will not supply an obligation to pay on the ground of unjust enrichment as a *quasi* contract unless, in the absence of the express agreement, a real but tacit contract could have been inferred from the circumstances." *Travelers' Ins. Co.* v. *Johnson City* (C. C. A.), 99 Fed. 667; *Mount Jackson* v. *Nelson*, 151 Va. 396, 145 S. E. 355; *Hitchcock* v. *Galveston*, 96 U. S. 341, 24 L. Ed. 659; *Chapman* v. *County of Douglas*, 107 U. S. 348, 2 S. Ct. 62, 27 L. Ed. 378.

But it is necessary that a tacit promise to pay may fairly be inferred from the circumstances and the express contract set aside must have not been against public policy and not expressly prohibited by the charter or by statute.

"On the other hand it is doubtful if there are any

cases which hold that when a contract is in a class expressly prohibited by charter or statute the acceptance of benefits raises an implied obligation." McQuillen on Municipal Corporations (2d ed.), Vol. 3, page 820.

"So, too, the law is well settled that where, as in the case between these parties under consideration, the contract upon which suit is brought is forbidden by statute, the acceptance of benefits raises no implication of an obligation. The law is not chargeable with the absurdity of implying an obligation to do that which is forbidden." *Edison El. Co.* v. *Pasadena* (C. C. A.) 178 Fed. 425, 431.

"Contracts violating charter or statutory requirements have been held not to form the basis of implied obligations." Note C, 44 C. J. 139. Many cases cited.

Those who deal with public officials must at their peril take cognizance of their power and its limits. A failure to do so places them *in pari delicto.*

"It is settled beyond controversy that the agents, officers, or governing body of a municipal corporation, or of a county, cannot bind the corporation by a contract which is beyond the scope of its powers. The inhabitants of a municipal corporation are its corporators, and the officers are but the public agents of the corporation. Their duties and powers are prescribed by statute or by charter, which all persons not only may know, but are bound to know. It results from this doctrine that contracts not authorized by the charter, or by statute, and which are, therefore, not within the scope of the powers of the corporation, are void, and in actions thereon the corporation may successfully set up as a defense its want of power." *County of Alleghany* v. *Parrish*, 93 Va. 615, 25 S. E. 882, 884.

Section 40 of the city charter provides that contracts involving the expenditure of more than one thousand dollars shall be let to the lowest responsible bidder after due advertisement. Such salutary safeguards are upon occasion vividly necessary to protect the public from officials at times forgetful of their city's interest. Otherwise a contract on disastrous terms could be let at will to a favored contractor who, in the event that it was afterwards questioned, might still demand pay for work done. He would have everything to gain and nothing to lose.

"The law is not properly chargeable with the absurdity of implying an obligation to do that which it forbids." *Edison El. Co.* v. *Pasadena* (C. C. A.), 178 Fed: 425, *supra*.

When a contract covers many subjects, some of whose provisions are valid and some void, those which are valid will be upheld if they are not so interwoven with those illegal as to make divisibility impossible, but that is not this case. The contract here had but one object in view. The defendants wished to improve their property and as a consideration therefor the city agreed to relieve them from taxes for ten years. It must stand or fall as a whole.

If we put aside the contract, the consideration of public policy, the statutes and all that has been said, what inheres in the transaction on which to predicate an implied promise to pay?

These gentlemen owned a tract of land which they "desired to subdivide into streets and lots and sell principally for residence purposes and factory sites." Following up the purposes which they thus expressed, a part of this ninety-nine acre tract was subdivided, streets laid out, certain municipal conveniences installed, and a plat recorded, all primarily for their own benefit. Is a city obligated to pay any part of the cost incurred by a man in the development of his own

property? We think not. If such a burden is to be placed upon Bristol, it must in its last analysis be imposed by something written into the contract. That likewise for reasons noted cannot be done. The judgment complained of must be reversed in so far as it gives judgment against the city and sustained to the extent that it permits a recovery for unpaid taxes.

*Affirmed in part; reversed in part.*