16855

**TOWN OF MYRTLE BEACH v. SUBER**
(81 S. E. (2d) 352)

*Arthur W. Holler, Jr., Esq.,* of Myrtle Beach, *for Appellant,*

*Messrs. Long & Long,* of Myrtle Beach, *for Respondent.*

April 5, 1954.

OXNER, Justice.

This action was brought by the town of Myrtle Beach against T. B. Suber, a former member of the Board of Commissioners of Public Works, for an accounting. It was alleged that while said Board had custody, control and management of the water distributing system previously used by the Government in the operation of the Myrtle Beach Air Base and subsequently, upon the closing of said military establishment, transferred to the Town of Myrtle Beach, that the defendant, in disregard of his duties and responsibilities as a member of the Board of Commissioners of Public Works, unlawfully removed and converted to his own use a substantial amount of property belonging to said water system, including four cypress water tanks of considerable

value. The prayer of the complaint was that the defendant be required to deliver to plaintiff any of said property capable of identification and delivery in its original condition, and for judgment against the defendant for the value of any such property which could not be so delivered.

Except as to the formal allegations of the complaint, the defendant's answer was a general denial. The case was referred to the Master for Horry County who, after taking considerable testimony, filed a report in which he found that the only property used by the defendant consisted of four cypress water tanks and that these tanks had been purchased by him in good faith from the Commissioners of Public Works and the full value thereof paid. The Master recommended that the complaint be dismissed. His report was confirmed by the Circuit Judge.

The questions raised on this appeal can better be understood after a brief review of the facts. The water tanks mentioned constituted a part of the water distribution system for the Myrtle Beach Air Base. When this Base was closed in 1948, the Government conveyed to the Town of Myrtle Beach the land and buildings thereon, together with the water system and other utilities used in the operation of said establishment. This conveyance contained the following limitation:

"That no property transferred by this instrument shall be used, leased, sold, salvaged, or disposed of by the party of the second part (The Town of Myrtle Beach) for other than Airport purposes without the written consent of the Civil Aeronautics Administrator, which shall be granted only if said Administrator determines that the property can be used, leased, sold, salvaged or disposed of for other than Airport purposes without materially and adversely affecting the development, improvement, operation or maintenance of the Airport at which such property is located; * * *".

The conditions just outlined are in accord with Section 1622 (g) (2) (A) of Title 50 U. S. C. A., War and National Defense Appendix.

The use of said water system was discontinued shortly after the foregoing conveyance. Water to this area was then furnished from the town's system. In May, 1949, the town transferred to the Board of Commissioners of Public Works the custody, control and management of its water works system. In June, 1949, the defendant was made a member of this Commission. In August, 1951, defendant requested the other two members of this Commission to set a price on four of the cypress tanks. At that time none of the tanks were in use as they were no longer needed. The other Commissioners, in the absence of and without any participation by defendant, fixed a price of $50.00 per tank. Defendant accepted the offer and paid to the Water Works Commission the purchase price of $200.00, dismantled the tanks, had the cypress lumber resawed and redressed and used most of it in the construction of a motor court. In addition to paying the foregoing amount, he expended the sum of $65.00 in dismantling a fifth tank which was used by the Commission of Public Works in the construction of a shop and for other purposes, thus making the total amount paid by him $265.00. The following conclusion of the Circuit Judge is abundantly sustained by the testimony:

"There was no secrecy attendant to the purchase of these tanks, all transactions being in the presence of Mr. J. H. Heape, Secretary of the Commission, and Mr. J. F. Montgomery, Water Superintendent. The tanks had not been in use for over a year and there was no intent by the Town of Myrtle Beach to employ the tanks in its water distribution system. Water was being furnished to the Airbase property from the Town system, after the property was conveyed to the plaintiff. The tops and bottoms of the tanks had rotted from exposure, lack of attention and non-use. The cost of operation of the system on the Airbase was too great to justify its operation by the municipality and this is the reason for its cessation after being deeded to the Town. The first and only reasonable inference to be drawn from the testimony is that the tanks were of no value to the Town as a

part of the waterworks system; second, deterioration was in progress; and, third, they were considered to be, and sold, on a salvage basis."

By Act No. 839 of the Acts of 1952, 47 St. 2076, approved March 12, 1952, the office of the Commissioners of Public Works of the Town of Myrtle Beach was abolished and the duties and powers of this body were devolved upon the mayor and councilmen. Within two weeks thereafter the instant action was commenced.

The first question we shall consider is a procedural one. It is claimed that it was improper to go into an accounting until the plaintiff's *right to an accounting was determined*. It appears from the record that after issues were joined, plaintiff first moved for judgment on the pleadings. This motion was denied. Plaintiff then moved for a general order of reference. This was opposed by defendant on the ground that he was entitled to trial by jury. The Circuit Judge held that the complaint stated a cause of action for an accounting and granted plaintiff's motion for an order of reference. We agree with the Court below that the right of the plaintiff to an accounting was decided by the last mentioned order. Moreover, plaintiff participated in the reference on a general accounting without any reservation and the question now under consideration was not raised until after the testimony was taken. Both parties have been fully heard on the issues involved and plaintiff has been afforded ample opportunity to cross-examine the defendant. No good reason appears why this case should be recommitted for the purpose of having all this testimony taken again.

Plaintiff next contends that the alleged sale of the tanks to the defendant was void because (1) the Board of Commissioners of Public Works was without authority to sell said property, (2) the sale was not approved by the Civil Aeronautics Administrator as required by the limitation in the deed by the Government to the Town of Myrtle Beach and

the Act of Congress under which said conveyance was made, and (3) defendant, being a member of the Board of Public Works, could not purchase property from that body or otherwise enter into any valid contract with it. These grounds will be discussed in the order stated.

In support of the first ground, it is argued that the City Council alone was empowered to control and direct the fiscal affairs of said water works system and that the Commission of Public Works was a mere agency of the City Council. We decided otherwise in the recent case of *City of Spartanburg v. Blalock,* 223 S. C. 252, 75 S. E. (2d) 361. After discussing the legal status and powers of commissioners, of public works and their relation to the municipality and to the city council, we held that Section 59-179 of the 1952 Code, under which the water system of the Town of Myrtle Beach was being operated at the time of this transaction, conferred upon the commissioners of public works all powers necessarily incident to the operation and management of the water works and that the city council was not vested with any authority or power in the management thereof. It follows that the Commission of Public Works was the proper body to handle the sale of any miscellaneous property of the nature involved in this controversy which was no longer needed in the operation of the water works system.

The next ground upon which the sale is attacked is that it was made without the approval of the Civil Aeronautics Administrator. While the Circuit Judge found that he was notified of the sale by the airport manager, the record does not show whether he approved or disapproved the transaction. Certainly there is no evidence of his written consent to the sale of these tanks. The limitation in the deed expressly provides that such consent shall be granted only if the Civil Aeronautics Administrator determines that the property can be sold or otherwise disposed of "without materially and adversely affecting the development, improvement, operation or maintenance of the airport

at which such property is located." However, it does not seem to require that he approve the price at which any such property is sold. In this action by the town against the defendant for an accounting with respect to property which it is now impossible to return in its original condition, we are unable to see the relevancy of the failure to obtain the consent of the Civil Aeronautics Administrator for the sale of these tanks. This officer is not a party to this action. It would, therefore, be improper to undertake to adjudicate the rights of the Government, or to determine what remedy it has on account of the disposition of this property without the consent of the Civil Aeronautics Administrator.

■ There remains the contention that the transaction is void because the defendant could not purchase property from a public body of which he was a member. Both the Master and the Circuit Judge found, and the overwhelming weight of the evidence is, that the defendant acted in good faith and did not vote or otherwise participate at the meeting of the Board of Commissioners authorizing said sale. Nevertheless, some courts hold that a contract made under these circumstances is void. *City of Bristol v. Dominion National Bank,* 153 Va. 71, 149 S. E. 632; *Trainer v. City of Covington,* 183 Ga. 759, 189 S. E. 842. Other courts take the view that such contracts are merely voidable. McQuillin on Municipal Corporations, (2d) Ed., Sections 531, 629 and 1354; 37 Am. Jur., Municipal Corporations, Sections 67 and 275. Our decisions are not entirely clear on the subject. See *Allbright & Pinchback v. Town Council of Chester,* 9 Rich. 399; *Duncan v. City of Charleston,* 60 S. C. 532, 39 S. E. 265, both of which are discussed in the recent case of *Gilbert v. McLeod Infirmary,* 219 S. C. 174, 64 S. E. (2d) 524, 24 A. L. R. (2d) 60. It may not also be amiss to call attention to the fact that we have a statute, of doubtful applicability to the transaction under consideration, which provides that in cities of certain size, except under certain conditions, "no municipal officer shall take a contract to perform work or furnish ma-

terial for the municipal corporation of which he is an officer and no such officer shall receive any compensation on any such contract". Section 47-804 of the Code of 1952.

We find it unnecessary to determine whether the transaction now under review is void or voidable. This is not an action to set aside or to enjoin the sale of property to the defendant. Neither is he here seeking affirmative · relief on a contract made with the Commissioners of Public Works. The proceeding before us is solely one by the municipality for an accounting.

While the complaint alleges that the defendant removed from the premises other property, there is no evidence that he ever came into possession of any property belonging to the Town of Myrtle Beach other than the four tanks which he undertook to purchase. Both the Master and Circuit Judge found that he has paid full value for this property. We are in full accord with this conclusion. In fact, a reputable contractor testified:

"Q. Mr. Jones, if you were going to build a building which would you consider cheaper, the buying of new pine lumber or the buying of salvaged water tanks made of tank grade cypress for the purpose of building the building? A. Frankly speaking, if they had given me every tank out there I wouldn't have them. *  *  *

*  *  *

"Q. You say you wouldn't have had the tanks if they had given them to you? A. Not me, it would cost me more to build a building out of them than if I had bought new lumber. *  *  *"

The plaintiff sought to show inadequacy of price by offering testimony to the effect that these four tanks contained approximately 18,000 feet of cypress, which was then bringing from $260.00 to $290.00 per thousand board feet. On this basis, it is argued that the tanks were worth around $5,000-.00. But we do not think that the true value of this property can be ascertained in this manner. It does not take into

consideration the fact that many of the boards were unusable, the cost of dismantling, the waste in dismantling, estimated by one of appellant's witnesses to be as much as a third, and the fact that the boards had to be sawed and dressed at considerable expense. The testimony shows that the defendant did not profit from the transaction because he could have purchased new lumber suitable for this motor court at a price much less than that which the cypress he used ultimately cost him.

Finally, it is stated that the Circuit Judge found that of the approximately 18,000 feet of cypress in these four tanks, only 7,000 feet were used in the construction of the motor court. It is argued from this that the defendant now has on hand 11,000 feet of the cypress lumber, which it is said should now be ordered turned over to the plaintiff. But we do not think the lower court meant that defendant now has approximately 11,000 feet of usable cypress lumber. As previously stated, there was considerable waste and some of the boards were not usable. In fact, one of the town's witnesses testified there was only left "a very small pile of good lumber." Since we have concluded that defendant paid full value for these tanks, no good reason appears why this small amount of lumber, which would be of little value to the town or anyone else, should be turned over to the plaintiff.

Exceptions 10 and 11 need not be considered since if they were sustained, the conclusion which we have reached would be the same.

Affirmed.

BAKER, C. J., STUKES and TAYLOR, JJ., and T. B. GRENEKER, A. A. J., concur.